## BOUTON *vs.* THE AMERICAN MUTUAL LIFE INSURANCE COMPANY.

A provision in a life insurance policy, that in case the annual premium shall not be paid in advance the policy shall cease and determine, being for the sole benefit of the insurers, it is competent for them, after the time stipulated for the payment, to waive a strict compliance with it, and in case of such waiver, the policy will be revived and continue obligatory on its original terms; and the acceptance of the premium constitutes such a waiver.

A provision in such a policy, that it shall not be binding until countersigned by W , agent, and delivered and the advance premium paid, does not confer on W. authority to accept the payment of a subsequent annual premium, after the day when by the terms of the policy it was payable and where the policy by reason of such non-payment had ceased to be obligatory.

An agreement made in good faith between an insurance agent, having authority to receive an insurance premium, and the insured, that the agent shall become personally responsible to his principals for the amount of such premium and the insured his personal debtor therefor, constitutes a payment of the premium as between the insured and the insurance company.

Bouton *v.* The American Mutual Life Insurance Company.

THIS was an action on a policy of insurance issued by the defendants on the life of Josiah Bouton, for the benefit of the plaintiff his wife.

By the policy, which was set out on the declaration, and which was dated the 25th day of February, 1851, the defendants, in consideration of the sum of $114.34, to them paid by the said Josiah Bouton, to January 1st, 1852, and of the premium of $134.80 to be paid annually on the first day of January during the continuance of the policy, or half or quarter yearly in advance, with interest on each portion deferred, insured the life of the said Josiah, for the use and benefit of the plaintiff, in the sum of $4,000 for the term of his natural life, and promised to pay said sum to her within ninety days after due notice and proof of the death of said Josiah. It was also provided in the policy that in case the annual premium should not be paid in advance, the company should not be liable for the payment of the sum insured and the policy should cease and determine. The concluding clause of the policy was as follows. " In witness whereof, the said American Mutual Life Insurance Company have, by their president and secretary, signed this contra'' '' 25th day of February, 1851; but the same shall not be . ing until countersigned by W. W. Webb, agent, and deliv and the advance premium paid." The policy was sign the president and secretary, and on the 27th day of Febr countersigned by the said Webb.

The said Josiah Bouton died on the 9th day of Ja 1852. The plaintiff alledged a payment to the defen of the annual premium which became payable on th day of January, 1852, which the defendants by their p d-ings denied, and claimed that the policy had expired before the decease of the said Josiah.

The case was tried before the jury on the general issue, with notice, at the term of the superior court holden in New Haven county, in March, 1856.

On the trial, the plaintiff, for the purpose of proving that the premium in question had been paid, and that the policy

was in force at the time of the death of the said Josiah, offered evidence to the following effect:

That the said Josiah, on the 2d day of January, 1852, having been somewhat unwell for a few days, and then confined to his house, sent for Mr. Webb, the insurance agent, to call and see him about his life insurance policy; that Webb came in the afternoon of the same day; that the said Josiah then said to him that he had sent for him about his insurance policy, that he told Webb that he had but $18, and asked him if that would make his policy safe; that Webb replied, " seeing you are so sick and unable to get out, I will take the $18, and accommodate you until you get out;" that the said Josiah thanked him, and told him that Mrs. Bouton would hand him the $18; that Mrs. Bouton then went with him into the front parlor and handed him the money, which he counted over; that she asked him if it was correct, and he said " yes, I will take this $18 and give your husband credit for having paid so much towards his premium," and on her asking if it was all right and would secure the policy till her husband could get out and pay the balance, added " yes, it is all right and I hope your husband will get out in a few days and pay the balance." Also one Dauchy, who occupied the same store with the said ah, and was daily at his house during his sickness, on the day of January, 1852, went to see Webb with regard to payment of the balance of the premium, and requested him to take money and give him a receipt; that Webb repeated from the above stated conversation at Bouton's house, and acknowledged receiving the $18 from Mrs. Bouton, but declined to receive the balance except under protest, and was not willing to give the receipt requested, but suggested that Dauchy might pay the amount to the young man in his (Webb's) office; that Dauchy asked him the amount due, which he stated to be $116; and that Dauchy at once went to the store and got the money and paid it to the young man in Webb's office: it appearing on cross-examination, that the said Josiah was considerably worse that day, which was known to the said Dauchy, and that Webb said to him, at the time that he proposed to pay him the balance of the pre-

mium, that it was against the rules of the company to receive the premium from a person who was sick, after the policy had expired, and against his instructions.

Upon the foregoing evidence, (with other evidence not important to the questions here raised) the plaintiff rested her case, and the defendants moved for a nonsuit, which the court refused to grant. The defendants thereupon offered no evidence, but claimed, and requested the court to charge the jury:

That upon the facts claimed by the plaintiff she was not entitled to recover: that the policy of insurance, expired by its own terms on the 1st day of January, 1852, by reason of the non-payment of the premium thereon on or before that day: that the evidence submitted by the plaintiff did not confer upon Webb any power to make a new contract obligatory on the defendants, or to renew the old contract after its expiration, especially under the circumstances proved, when the risk attempted to be assumed was increased by the sickness of the insured: that if Webb had the power to renew the contract after its expiration, he had no power to change its terms: that the smallest amount which by the terms of the policy could at any time be received in renewal, was $33.70, or payment for one quarter, and that his reception of a less sum did not operate to renew the contract: that the $116 paid by Dauchy, in the manner stated, on the 5th day of January, to the clerk of Webb, did not operate to renew the policy.

The court did not so charge the jury, but instructed th as follows:

The policy described in the plaintiff's declaration expired by its terms on the 1st of January, 1852. But it was such a contract as could be revived by the defenda or their authorized agent; and when so revived it would have the same effect as if it had not been permitted to expire. The defendants insist that the evidence submitted the plaintiff does not confer upon Webb the power their agent, to do any act that will revive this policy for the purpose of this trial you will take the la that the

Bouton *v.* The American Mutual Life Insurance Company.

agent, Webb, was by virtue of his relations to this company, as indicated in this policy, authorized to receive the annual payments of premium due; and if he has done so, even after the 1st day of January, 1852, and it was done in good faith, its effect is to revive the policy, and make the company liable thereon.    He had the power to renew the policy only on its original terms.    He could not change or vary it.    He might also renew this policy, not only by receiving the annual premium in money, but he might agree to become responsible himself, personally, to the company, for the premium, and make the insured his debtor for the amount: and if he has done this in good faith, it amounts to a payment of the premium, and the policy is thereby revived.    The money paid by Dauchy, if not in effect paid to and received by Webb as agent of the defendants, as premium due on this policy, would not revive the policy.    Whether it was so paid and received is for you to say.

If you shall find that the premium upon this policy was paid to and received by Webb, as the agent of the defendants, in good faith, though the same was paid after the 1st day of January, 1852; or if you shall find that Webb agreed to become personally responsible to the defendants for the premium, and to make Mr. Bouton, the insured, his debtor, and that this was also done in good faith, though done after January 1, 1852, you will return a verdict for the plaintiff, otherwise your verdict will be for the defendants.

The jury returned a verdict for the plaintiff, and the dedants moved for a new trial for a misdirection, and for a lict against evidence.

*Blackman* and *Beach*, in support of the motion.

The policy by its own terms, "ceased and determined" on the 1st day of January, 1852.    *Tarlton* v. *Stanforth*, 5 T. P., 695.    *Want* v. *Blunt*, 12 East, 182.    *Russe* v. *Mutual Insurance Co.*, 8 Georgia, 534.    If it was ever revived, it was so, not by the company directly, but by Webb, acting their agent.    But we claim that Webb had no power as to revive the policy after its expiration; and

that if he had the power, the acts in question were not suffi-cient for that effect.

1. There was no evidence as to the fact of Webb's agency, or as to his powers as such agent, except that the policy of insurance contained the clause; "not valid until countersigned by W. W. Webb, agent, and delivered and advance premium paid." The judge in his charge based his opinion entirely on this clause. In the absence of any acts or conduct of the principal, enlarging by implication the power of an agent, or of his omissions to act when he ought to act, to prevent such implication, neither of which is claimed here, the agent's powers are limited by the authority originally conferred, both as between himself and his principal, and between the princi-pal and third parties. Am. Leading Cases, 544. *Mechan-ics' Bank* v. *N. Y. & N. H. R. R. Co.*, 3 Kernan, 599, 632. The only powers conferred upon Webb by his being named as agent in this policy, were such as were requisite to enable him to carry into effect the contract it contained. He was authorized to receive the first premium stipulated for in the policy, to deliver it to the insured, and thereafter to receive the subsequent premiums in the manner and at the times stipu-lated in the written contract, and as a matter of law he had no other powers, for none other can be legally inferred from the instrument under which he was appointed. If the com-pany have ever done anything, or omitted to do anything, which would lead the insured or the public to infer that he had any other powers; or if there is any peculiar authority to be inferred as vested in an agent, because he is an insur-ance agent, such inferences are to be drawn by the jury, and not by the court.

2. When the policy expired, Webb's power as ag.. .. pired with it. *Acey* v. *Fernie*, 7 M. & W., 151.. *Perki Washington Insurance Co.*, 4 Cow., 645. His powers are be measured by the same rule the day after the expirat n, as the year after. Whether the agent acts "in good faith" is no criterion of his powers; if the act is within his autho-ity, the principal is bound, though he acts in bad faith.

3. If Webb could revive the contract in any mode, he had

no power to change the terms of the policy, and to agree that a less sum than the premium named in the policy, should operate to revive it. The premium stipulated is the only consideration for the contract. If he could diminish the amount, he could waive it altogether, and agree that the policy holder should remain insured, without any premium paid or agreed to be paid; or he could alter the contract in any other particular. The least amount which, by the terms of the policy, could at any time be received in renewal, was $33.70, and Webb received but $18.

4. The judge erred in instructing the jury that if Webb agreed with the insured to become personally responsible to the defendants for the premium, it amounted to a payment of the premium, and the policy was thereby revived. We claim that he had no power to bind the company by such an agreement. He was appointed to receive the premiums under the policy. The policy specified distinctly that they were to be paid in cash. Webb knew this, and the insured knew it. An agent appointed to receive money, has no power, as such agent, to substitute himself as debtor to his principal, either by giving credit to the original debtor, or by an offset between himself and such debtor. Story on Agency, secs. 98, 99, 103, 413. *Ward* v. *Evans*, 2 Salk., 442. *Todd* v. *Reid*, 4 Barn. & Ald., 211. *Russell* v. *Bangley*, 4 Barn. & Ald., 395. *Sykes* v. *Giles*, 5 M. & W., 645. *Underwood* v. *Nichols*, 33 Eng. L. & Eq., 321. *Kingston* v. *Kincaid*, 1 Wash. C. C. R., 454. *Holton* v. *Smith*, 7 N. Hamp., 446. *McCulloch* v. *McKee*, 16 Penn. State R., 289. *Kirk* v. *Hyatt*, 2 Carter, 322. When the original authority is to receive cash, but the principal has by his acts or conduct or omissions held out the agent as vested with other powers, it becomes a question of fact for the jury, how far this implied authority extends. *Sheldon adm'rs* v. *Conn. Life Ins. Co.*, 25 Conn., 207. Here the jury were told that this agent, appointed to receive money, and only money, from a debtor who knew the limit of the agent's powers, had, as a matter of law, a right to bind his principal, by assuming the debt upon himself.

Bouton *v.* The American Mutual Life Insurance Company.

*Dutton* and *Carter,* contra.

1. The charge of the court as to the power of Webb to revive the policy was correct. 1st. Webb is described in the policy as agent; this of course means general agent, unless there is something to restrict it, and gives the agent all the power of the principal. *Methuen Co.* v. *Hayes,* 33 Maine, 169. 2d. There is nothing from which any restriction can be implied, unless it is, that he is named as agent in connection with this policy. But this at most would only restrict his agency to this contract of insurance. He would still have the right to make any arrangement regarding this contract which the insurance company could. 3d. What the agent said of his instructions, would not prove what the instructions were. The defendants, to have claimed any thing from this, should have proved before the court what the instructions were. 4th. Any instructions to the agent would be of no avail unless communicated to the plaintiff. *Perkins* v. *Washington Ins. Co.,* 4 Cowen, 645. *Lightbody* v. *Am. Life Ins. Co.,* 23 Wend., 18. *McEwen* v. *Montg. County Ins. Co.,* 5 Hill, 101.

2. The charge of the court was correct as to the effect of Webb's charging himself with the premium and accepting the insured as his debtor, and that such an arrangement would be equivalent to a payment of the premium. *Sheldon* v. *Conn. Mutual Life Ins. Co.,* 25 Conn., 207.

3. If Webb was the agent of the company, so far as this contract is concerned, he could waive the performance of the condition as to forfeiture of the policy. In *Wing* v. *Harvey,* 27 Eng. Law & Eq. R., 140, the court held that a similar condition could be thus waived. See also Angell on Fire and Life Ins., sec. 343. Also sec. 213, and note. Also, *Buckbee* v. *U. S. Annu. Ins. & Trust Co.,* 18 Barb., 541.

4. The agreement by Webb, and the receipt of the renewed the policy, whether any thing further was done not. *Masters* v. *Madison Co. Mutual Ins. Co.,* 11 Barb.

5. The court left the question of payment of the premium properly with the jury. The evidence tended to show the money paid by Dauchy to the clerk, was received by the

authority of Webb, and amounted to a payment to him. What Webb said regarding the rules of the company was admissible only as part of the *res gestæ* to be considered by the jury, on the question whether the money was received as payment. And the jury by their verdict have found it to have been so received. It was moreover Webb's duty to receive it, both by his agreement to receive it, and because Bouton had acquired an interest in the policy by his previous payment. Ang. on Fire and Life Ins., sec. 350. It is besides to be presumed, in the absence of evidence to the contrary, that both the sums received by Webb, were paid over by him to the company.

6. The verdict was clearly not contrary to the evidence.

STORRS, C. J. In regard to the first point made by the defendants, as to the effect of the non-payment by the insured of the premium in advance, as required by the policy in this case, although the conclusion to which we have come, on the question as to the evidence in regard to the powers of the agent of the defendants, renders a decision of it unnecessary, yet, as another trial of the case must be had, we have considered that point, and are of the opinion that, as the policy provides that, in case the annual premium required by it should not be paid in advance as therein mentioned, the defendants should not be liable for the payment of the sum insured or any part thereof, and the policy should cease and determine, it was optional with the defendants, on such non-payment, to consider and treat the policy as being at an end to all intents and purposes, in which case they would be absolved from all claim or liability thereon ; but, that as that provision was inserted for the sole benefit of the defendants, it was only voidable at their election, and that it was therefore competent for them to waive a strict compliance with or the time stipulated for the payment of such premium ; that in case of such waiver, the policy would be revived continue obligatory on the defendants on its original and further, that the reception by them, or their authorized agent of the premium for that purpose, after that

time, would have the effect of reviving and continuing the contract evidenced by the policy as though it had been strictly complied with by the insured. The authorities in support of this opinion are so numerous, uniform and explicit, and the reasons for it are so fully and satisfactorily given in them, that we deem it sufficient only to refer to them. *Wing* v. *Harvey,* 27 Eng. L. & Eq. R., 140. *Buckbee* v. *U. S. Annu. Ins. & Trust Co.,* 18 Barb., 541. *Sheldon* v. *Conn. Mut. Life Ins. Co.,* 25 Conn., 207. Angel on Ins., § 213, and note, § 343.

The next question is, whether it was proved on the trial that Webb was authorized by the defendants, as their agent, thus to waive the non-payment in advance of the premium as required by the terms of the policy. The first premium due on it was paid in advance to Webb, up to Jan. 1, 1852, according to its terms, and it was, at the time of such payment by him countersigned and delivered to the insured. The question before us respects the next premium payable in advance on that day, in regard to which, it was, as claimed by the plaintiff, paid by the insured to Webb and received by him for the purpose of reviving and continuing the policy, but confessedly after that day, and without any other authority in Webb excepting that which is contained in the policy itself. We are therefore to look to that instrument alone for the evidence of his authority to receive that premium. And the only expression in it, from which that authority is claimed to appear, is the testimonium clause at the end, which provides that the policy " shall not be binding until countersigned by W. W. Webb, agent, and delivered, and the advance premium paid." The question before us, therefore, depends on the true construction of that clause, or rather of the word "agent" contained in it, taken however, in connexion with any other part of the instrument which may shed any light upon its meaning. In this case there is nothing in any other part of it which aids us in ascertaining the extent of the authority conferred upon Webb as the agent of the defendants; so that in determining its extent, we are left entirely to the clause which has been

mentioned.  The policy whether it is to be considered as
conferring or only recognizing an authority to be exercised
by Webb, evinces that he has a power to act for the defend-
ants at least for some purposes, because that is necessarily
implied in the term by which he is expressly designated as
agent.   If, to suppose a case so singular, it had stopped there
and nothing in the instrument had been connected with that
term, or referred to by it, to show to what it related, it
would have been wholly indefinite and uncertain, not only as
to the subject, but also as to the extent of his authority.   It
would have indicated merely the existence of that relation
between the defendants and Webb which constitutes what is
termed an agency, but which would be consistent with the
existence of any one kind or any particular extent of power
conferred by that relation, as well as with another.   It would
have been satisfied by considering him as an agent for any
purpose and with any power whatever ; and it is difficult to
see on what ground any particular effect, or at most, more
than the most limited one, could properly be given to it.
We can not accede to the claim of the plaintiff, that the
broadest signification ought to be put upon it, because the
term agent is used without any express qualification.   To
give it such an unlimited effect would extend its meaning
beyond what it could reasonably be supposed was intended
by the parties ; and we are aware of no rule which requires
such a construction.   The rule of construing language in
pleadings and contracts most strongly against the party
using it, which however prevails only in cases of necessity
and where all other means of construction fail, does not apply
to an instrument by which an authority is delegated to an or-
dinary agent; it is not a contract, nor has it properly speaking
any parties; and it is at least questionable whether even in
pleadings, where the term in question should be used, it
would be construed to imply an authority as broad as the
plaintiff here claims from it.   There is not here any doubt or
obscurity as to the meaning of the term used, but the diffi-
culty arises from the circumstance that it of itself expresses
merely a particular relation between the defendants and

Webb generally, and which requires something more to be expressed, or to be inferred from extrinsic proof, in order to show the specific character and extent of that relation and to what acts in particular it was intended to apply. There is nothing in the character of this policy or in the language of the clause containing the term in question, which, in our opinion, requires that it should be interpreted by any artificial or technical rule of construction, or otherwise than according to its natural import. But this idea need not be pursued; for in this case the word we are considering is not left unconnected with any thing in the instrument from which the nature or scope of the agent's authority can be ascertained. The concluding expression in it, on which the question before us arises, is that the "contract" expressed in the policy "shall not be binding until countersigned by W. W. Webb agent, and delivered and the advance premium paid." From this it is clear that the policy was not intended to take effect by a delivery to the insured by the defendants immediately on its execution by the latter, or by any other delivery than one which should be made through an agent; that it was intended that the delivery of it by such agent was not to make the contract binding until it should be countersigned by him and the premium mentioned in it should be paid in advance; that is, before the commencement of the period for which the insurance under it should be effected; and that Webb was the particular and only person or agent to whom the premium should be paid, and by whom the policy should be countersigned and delivered on behalf of the defendants. The direct and immediate object of this clause was to prescribe the mode in which the policy should take effect as a contract between the parties. That mode is particularly described, and required the interposition of an agent, and Webb was designated as that agent. The clause states exactly what is to be done by him, or, in other words, the authority which the defendants have conferred on him. The word "agent," added to his name, considered as we are now doing, with reference only to the said clause, imports no more than that he was the agent of the

defendants to do and co-operate in the things which it was therein provided should be done for the purpose therein mentioned, of making the contract binding. One of those things was the payment by the insured of the premium in advance to, and consequently its reception by him. This being done, together with the countersigning and delivery of the policy, the contract became, but could not otherwise become, consummated and complete. The question now is as to the extent of the authority which was thus conferred on Webb in regard to the premiums provided for in the contract. We think that he was not empowered to receive any premium which was not paid according to the requirements of the policy, that is, in advance. That instrument was his sole guide in regard to what he should do under it. The contract was to be made by the defendants, and not by him excepting in the capacity of their agent; he was not authorized to alter or vary it, or depart in any respect from it, or dispense with the fulfilment of its conditions by the insured, or discharge it, or revive it after it had by its terms ceased to be obligatory on his principal, by a waiver of a compliance with its provisions or otherwise. These must be done by the parties to the contract. He was only authorized to act in pursuance of it, and then so far only as it gave him authority. He could exercise only the power delegated to him, and no power is delegated to him to depart from the terms of the policy. It surely is not necessary to cite books to show that an agent, authorized only to execute a contract in behalf of one of its parties, has no power to vary it or dispense with its execution by the other, or that one authorized by a person to receive a payment of a sum of money from another on and pursuant to a conditional contract which requires such payment to be made at a specified time, is thereby empowered to authorize or waive a breach of such condition. If it be admitted that by the clause in question, Webb was authorized to receive not only the first premium which was required to be paid on the policy, but also those which it provided might subsequently be paid upon it, which has not been denied by the defendants, the question before us may

be tested by inquiring whether, in respect to the first premium, the policy gave Webb any authority to bind the defendants by a delivery of the policy before the payment of such premium ; for as he had no greater power in regard to subsequent premiums than he had as to the first, it is quite clear that if he was not authorized to postpone the payment of the first, he was not as to those accruing afterward. To this inquiry the policy furnishes a most explicit and decisive negative answer. It expressly says that the policy shall not be binding "until the advance premium is paid." The whole authority of the agent being here expressed on the face of the instrument, there is no place for the doctrine which is applicable to cases where an agent with an ostensible general authority, is restricted by particular and special private instructions from his principal, and which has been adverted to by the plaintiff's counsel. We are therefore of the opinion that although Webb might be, and we are strongly inclined to think that he was, authorized by virtue of his agency, as indicated in the policy, to receive in advance the payment of premiums which should by its terms be payable subsequent to its execution and delivery, he was not thereby authorized to receive such premiums after the day on which it was provided by the policy, that they should be so paid in advance; and therefore that on this point a new trial should be granted. Our opinion is confined to the question as to the character and extent of Webb's authority as deducible from the terms of the policy itself; leaving the plaintiff at liberty to prove expressly by extrinsic evidence, an authority to receive premiums after the time when they were made payable by the terms of the contract, so as to revive it, or facts from which such an authority should be implied.

On the remaining question, which respects the effect of the agreement claimed to have been entered into between Webb and the insured, as to the mode in which the premium should be paid, we think that, on the assumption of the court below as to the extent of Webb's authority, the charge

on that point is sustained by our decision in *Sheldon* v. *Conn. Mutual Life Ins. Co.*, 25 Conn., 207.

In this opinion the other judges, HINMAN and ELLSWORTH, concurred.

New trial advised.