FRANK B. HACKETT *vs.* MIDDLESEX MANUFACTURING COMPANY.

A weaver on a floor next above the basement in a factory was charged with seeing that beams were conveyed from the basement to that floor by an elevator which was managed by a person in the attic. The aperture through which the platform of the elevator passed was closed on three sides, and at the remaining side there was a gate on each floor, kept closed except when goods were put on or taken off. When the platform was wanted by a workman, it was usual for him to pull a bell-rope and indicate, either by putting his head or hand into the aperture, or by some other signal, where it was wanted, and sometimes to pull the bell, wait till the platform had passed down to where he wanted it and then put his head above the platform and call to the manager to stop it, or take hold of the chain and in that way arrest the manager's attention. In an action by the weaver against his employers for an injury resulting from the falling of the platform on him, he testified that, wishing the elevator to raise a beam from the basement, he rang the bell, put his head into the aperture, looked up to see if the manager was at his post, saw the manager and thought the manager saw him; that he then looked down to see if the beam was ready; that his looking down could be of no service; that he continued to look down longer than it would take the platform with its ordinary speed to descend; that in lowering the platform, the elevator would not make a noise which he could hear; and that, while he was in that position, the platform fell, by reason of the breaking of the chain, struck his head and injured him. The evidence tended to show that the chain was originally 9-16 inch iron, but was worn so that at the place of breaking it was 3-16 inch; that a link next to the broken one was worn even thinner; and that there was a slight flaw at the place of fracture, which could not have been discovered when the chain was put up new. *Held*, that there was evidence for the jury of due care on the part of the plaintiff and of negligence on the part of the defendants.

TORT for injuries sustained by the plaintiff from the fall of the platform of an elevator, in consequence of a defect in its main chain. Trial in the superior court, before *Lord*, J., who signed the following bill of exceptions:

" The plaintiff was an operative in the defendants' factory in Lowell, and one of his duties was to see that beams with warps for the weavers were conveyed from the lowest or basement room to the weavers' room, next immediately above, by means of an elevator. The elevator was a square platform with a chain from each corner converging towards the centre, and at a short distance above the platform the chains united, and, from that point of union, the main chain extended to the attic, and passed over a drum, and, by means of mechanical power over a pulley, raised and lowered the platform. The aperture through which the platform or elevator passed was entirely closed on

three sides, and at the remaining side there were in the several stories gates some four feet high, kept constantly closed, except when goods were put on or taken off the elevator.

" There was evidence tending to show that there was a bell in the attic, where the person having charge and control of the elevator was stationed, with a line running down in the corner of the space used by the elevator next to the gates; that when the elevator was wanted that bell-pull was drawn; that it was customary, when the elevator was wanted, for the person who pulled the bell-rope to indicate, either by protruding his head or his hand, or by some signal, where the elevator was wanted; that sometimes the person wanting it would pull the bell, wait till the elevator had passed down to where he wanted it and then put his head above the platform of the elevator and call to the person having it in charge to stop it, or take hold of the chain and in that way arrest the attention of the person having it in charge and cause it to stop. The evidence showed also that if the bell was pulled the man having charge of it would lower it to the basement unless he had notice to the contrary. In this instance the elevator was wanted in the basement, and, if the bell had been pulled and the plaintiff had made no signal, it would have descended to the basement, if at all. The plaintiff testified that he had been accustomed to pull the bell and then project his head and look up to see if the elevator manager was at his post, and that he had been told that that was the proper mode; that on the occasion when the injury was received, the plaintiff was on the floor above the basement; that he wished the elevator to raise a beam from the basement to the floor on which he was; that he rang the bell and projected his head, looking up to see if the manager was at his post, and, the elevator not descending after a short time, he rang the bell again and then looked up and saw the manager and thought the manager saw him; that he then looked down into the basement to see if the beam was ready; that his looking down could be of no service; that he continued to look down a space of time longer than it would take the elevator with its ordinary speed to descend according to his judgment, though he could not state

the time with any degree of precision ; that, in descending, the elevator would not make a noise that he could hear; that, while in that position with his head projecting and looking down, the elevator fell, by reason of the breaking of the elevator chain, struck his head and injured him. The evidence tended to show that the chain was originally 9-16 inch iron, but had been badly worn ; that at the place of breaking it was 3-16 inch, and that a link next to the broken one, and which did not break, was worn even thinner. The evidence also tended to show that there was a slight flaw in the iron of the broken link at the place of the fracture, which could not have been discovered when the chain was put up, which was when it was new. The plaintiff had no knowledge of the condition of the chain.

" The counsel for the plaintiff contended that the plaintiff was an ignorant man, and confused under the cross-examination of the defendants' counsel; and that this ignorance and confusion of mind should be considered by the jury as explaining and modifying the plaintiff's testimony. But upon this state of the evidence the presiding judge ruled that the plaintiff was not entitled to recover, and the jury returned a verdict for the defendants, the plaintiff alleging exceptions."

*N. St. J. Green,* ( *C. Cowley* with him,) for the plaintiff.

*W. P. Webster*, for the defendants, cited *Bancroft* v. *Boston & Worcester Railroad Co.* 97 Mass. 275; *Frost* v. *Grand Trunk Railroad Co.* 10 Allen, 387; *Snow* v. *Housatonic Railroad Co.* 8 Allen, 441, 448; *Todd* v. *Old Colony & Fall River Railroad Co.* 7 Allen, 207 ; *Denny* v. *Williams,* 1 Allen, 1, 5; *Sweeny* v. *Old Colony & Newport Railroad Co.* 10 Allen, 368.

HOAR, J. This case is one of a class which has become quite numerous, in which the question arises whether a person who has received an injury from the alleged negligence of another was himself in the exercise of due care. The question what is due and reasonable care under a particular state of circumstances is usually a question of fact for a jury. As the burden of proof is upon the plaintiff to show that he used due care, if the evidence on his part has no tendency to show it, or tends to show that he was careless, it is competent for the court in

such a case to direct a verdict for the defendants. But unless it is perfectly clear that a plaintiff has not shown that he used due care, the case must be submitted to the jury.

The case at bar seems to us very near the line, but on full consideration we are of opinion that it did not fall within the province of the court as a matter of law, and that a new trial should be granted.

The injury was received by the plaintiff while in the course of his employment, and from a defect in the machinery belonging to and furnished by the defendants. Whether this defect was the result of the defendants' neglect or want of care in omitting to ascertain its condition, was one question for the jury. If this was proved, it is still objected that the plaintiff's exposing himself to the danger was unnecessary and voluntary. In a strict and absolute sense perhaps this is true. The plaintiff was not required to look down to see whether the beam was ready, or to put his head under the descending elevator. But we think this is too rigid a rule to be applicable to the common affairs of life. It can hardly be expected that workmen will not move a little while they are engaged about their work; and if they are exposed to danger from defective machinery of which they are unaware, the question is, whether they were in a position such as, without carelessness, they might be reasonably and naturally expected to occupy, and not improper for a person so employed. This is a question of fact, under all the circumstances of the case, and not of law.

*Exceptions sustained.*