## Mutual Benefit Life Insurance Co.

*v.*

## Mary P. Robertson.

59   123
149   326
59   123
⸱ 77a 445

59    123
103a ⁴540

59    123
212  ¹391

1. Life insurance—*renewal receipt.* Where a policy is issued to insure the life of a person for the term of life, in consideration of the premium paid, and to be paid annually during its continuance, a receipt given for the annual premium, and which recites that the policy was thereby continued in force for another year, does not constitute a new contract but merely operates to continue the old one.

2. Same—*effect of misrepresentation.* The wife of the party whose life was insured, and for whose benefit the policy was obtained, stated to the agent of the company at the time of procuring such a renewal receipt, in answer to his inquiry on the subject, that her husband, who was absent in another State, had written to her and that he was in his usual health : *Held,* in an action on the policy, the statement being verbal, and not referred to in the policy, should be deemed to have been a mere representation. It was independent of the contract, and collateral to it. It may have been untrue, and yet not avoid the policy. To give it that effect it must be proved to have been material, and that it induced the risk.

3. But even the failure to communicate a material fact, unknown to the assured, will not vitiate a policy. The undertaking is merely to represent, truly, facts within the knowledge of the assured.

4. Same—*of the allegations and proofs.* In an action upon a policy of life insurance, the introduction of the policy, and receipts for the annual ₊premiums required by its terms to be paid, and proof of the death of the party whose life is insured, will make a *prima facie* case in favor of the plaintiff. He is not bound to set out the application and prove its truth.

5. Same—*of a warranty by the assured.* A warranty is in the nature of a condition precedent; it must appear on the face of the policy ; or, if on

another part of it, or on a paper physically attached, it must appear that the statements were intended to form a part of the policy; or, if on another paper, they must be so referred to in the policy as clearly to indicate that the parties intended them to form a part of it. A warranty can not be created nor extended by construction.

6. INDECOROUS LANGUAGE *towards the Judge below.* Where counsel employ in their printed arguments in this court, improper and indecorous language respecting the judge below, such arguments will be stricken from the files, and such other action taken as will protect the circuit judges from like aspersions.

APPEAL from the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

Messrs. SNYDER & DILL, for the appellant.

Mr. WM. H. UNDERWOOD, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This is an action of assumpsit, upon an insurance policy.

The declaration contains two special, and the common counts.

The general issue was filed, and also special pleas as follows :

First, that the policy was originally procured by fraud and misrepresentation; second, that it became void on the 19th day of March, 1869, in consequence of the non-payment of the premium, and its renewal was effected by fraud and misrepresentation.

The life of the deceased was insured in 1866, for the benefit of his wife, 'the appellee, and a renewal was procured from year to year.

Appellee recovered a judgment for the amount of the policy and interest.

The assured died in January, 1870. There was introduced, in evidence, a receipt for the annual premium, of date March 19th, 1869, signed by the proper officers, which, by its terms, continued the policy in force for one year from its date. The

language of this receipt is, "Policy on the life of Byrd M. Robertson is hereby continued in force for one year from date, settlement of the premium having been made." The policy was issued to insure the life of the deceased for the term of life, in consideration of the premium paid, and to be paid in each year during its continuance.

This receipt did not make a new contract; it was merely evidence of compliance with the condition of the policy. It did not alter its terms or legal effect, or change the parties; it was not an independent contract, but a continuance of the old one.

A *prima facie* case was made in behalf of appellee, by the introduction of the policy, the renewal receipt, and proof of the death.

It is contended, that the continuance of the policy was procured by fraud. This is the allegation of the plea, but it is wholly unsustained by the proof.

The premium was due in March, but it was not all paid until in November, and the receipt was actually given in November, and ante-dated. The agent had occasionally advanced it —had assured appellee that it need not be paid on the exact day named in the policy; had induced her to believe that it had been advanced, and had received a part of it in July. He testified that he made inquiry of her as to where, and how, her husband was, in November. She replied, that he was in the State of Missouri; she had just received a letter from him, and that he was in his usual health.

Dr. Perryman, the medical examiner of the company, testified, that in a conversation with appellee, in November, she said she had received a letter from her husband, stating that he was well.

The policy, introduced in evidence, stated that it was made in consideration of the representations contained in the application, and of the premium, and "that if the declaration, made by or for the assured, and bearing date March 19th, 1866, and upon the faith of which this agreement is made, shall be

found in any respect untrue, then this policy shall be void;" and that upon failure to pay the annual premium on the days mentioned, the policy should cease and determine.

Conceding that the representations contained in the application for the policy, were made warranties by the reference to them in the policy, still we can not say that they were untrue. The application was not introduced, and we are not advised, by the evidence, of its contents. We can not determine, that there was either misrepresentation or concealment of facts. For aught that appears in this record, there may have been a full disclosure of every fact material to the risk, and a true answer to every question propounded.

Appellee was not bound to set out the application and prove its truth. This paper must have been in the custody of appellant. The company might have introduced it, and proved its representations to be false. We can not surmise, that it contained a warranty of good health, in the absence of proof. *New England Fire and Marine Insurance Co.* v. *Wetmore,* 32 Ill. 221.

There was, then, no warranty of good health. A warranty is in the nature of a condition precedent; it must appear on the face of the policy; or, if on another part of it, or on a paper physically attached, it must appear that the statements were intended to form a part of the policy; or, if on another paper, they must be so referred to in the policy as clearly to indicate that the parties intended them to form a part of it. A warranty can not be created nor extended by construction. Reynolds Life Insurance, 85 *et seq.; Campbell* v. *New England Insurance Co.* 98 Mass. 381; *Burritt* v. *Saratoga Insurance Co.* 5 Hill, 188; *Jefferson Insurance Co.* v. *Cotheal,* 7 Wend. 72.

The only proof to sustain the charge of fraud and misrepresentation, was the remark of appellee to the agents of the company, that she had received a letter from the deceased; that he was in Missouri, and in his usual health. The deceased was a traveling agent, and the fact of his absence from home was known to the agents of the company.

This statement was verbal, and is not referred to in the policy, and must be deemed to have been a mere representation. It was independent of the contract, and collateral to it. It may have been untrue, and yet not avoid the policy. It must be proved to have been material, and that it induced the risk. *Farmers' Insurance Co.* v. *Snyder*, 16 Wend. 481.

Did it induce the risk? The evidence satisfies us to the contrary.

The renewal receipt, though dated the 19th of March, was, in fact, executed on the 11th of November. The premium should have been paid on the 19th of March. Notwithstanding this provision in the policy, a part of the premium was received by the agent of the company, in July; and he had induced appellee to believe that it had been advanced. An advancement of it had previously been made by the agent.

The medical examiner of the company, on the 2d day of November, gave a certificate that the assured was then in good health. He had made a careful and personal examination of him, in March, and in September or November, 1869. Besides, appellee testified that she made no application for, and did not know of the necessity of, such a certificate. We think these acts of the agents were the result of their own knowledge, and were not prompted by the representation of appellee.

Their acts were voluntary; the premium was received by the agent, and forwarded to, and accepted by, the company. The agents acted within the scope of their authority; the company ratified these acts. The right of forfeiture was thus waived, and we can not encourage the perpetration of a fraud by permitting the company to repudiate the conduct of its agents. The condition of forfeiture, in case the annual premium is not paid on the day named, is for its benefit solely, and a waiver of a strict compliance continues the obligation. *F. & M. Insurance Co.* v. *Chesnut* 50 Ill. 111; *Ætna Insurance Co.* v. *Maguire*, 51 Ill. 342; *Miller* v. *Phœnix*, 27 Iowa, 203; *Banton* v. *American Life Insurance Co.* 25 Conn. 542; *Wing* v. *Harvey*, 27 Law and Eq. 140.

But the evidence wholly fails to stamp the statement of appellee as a misrepresentation. There is no proof whatever, that she had any knowledge of the alleged sickness of her husband; she communicated all that she knew; she acted in perfect good faith. The failure to communicate a material fact, unknown to the assured, will not vitiate a policy. The undertaking is merely to represent, truly, facts within the knowledge of the assured.

In *Daniels* v. *Hudson River Fire Insurance Co.* 12 Cush. 417, Chief Justice SHAW said : " Misrepresentation is the statement of something as fact, which is untrue in fact, and which the assured states, knowing it to be not true, with an intent to deceive the underwriter; or, which he states positively as true, without knowing it to be true, and which has a tendency to mislead—such fact, in either case, being material to the risk."

In the case at bar, there is entire absence of any intent at deception. The representation was not of a positive character, but simply the communication of the contents of a letter. It was not the assertion of a fact, in reply to information sought, and could not have misled the agent. The representation did not induce the risk, and under the circumstances, was immaterial, and can not vitiate the policy. *Carter* v. *Boehm*, 3 Burr. 1905 ; *Biays* v. *The Union Insurance Co.* 1 Wash. Cir. C. R. 506 ; *Lord* v. *Dall*, 12 Mass. 115 ; *Swete* v. *Fairlie*, 6 Carr. & Payne, 1 ; *Huguenin* v. *Bailey*, 6 Taunton, 186.

All the evidence, then, as to the last sickness of the deceased, and the cause of his death, was wholly irrelevant, and the errors assigned thereupon are immaterial. The admission, as well as the exclusion of testimony, in regard to such matter, was error without prejudice. Such action of the court could not change the law of the case, or affect the propriety of the verdict.

Counsel for appellant have indulged in language, in their printed argument, highly improper and indecorous to the

judge on the circuit. Abuse can never rise to the dignity of argument. If such language had been used in an oral argument, counsel would have been peremptorily silenced.

For like offense in the future, the brief will be ordered to be stricken from the files, and such other action taken as will protect judges of the circuit court from like aspersions.

The laws must be respected; they constitute the basis of civil society. For the maintenance of this respect, a gentlemanly courtesy should ever be observed towards those who, for the time, administer them.

The judgment is right, and must be affirmed.

*Judgment affirmed.*