THE COTTON STATES LIFE INSURANCE COMPANY *vs.* LESTER, guardian.

| 62 247 |
| d110 149 |

Where the policy contained a stipulation, that unless the cash premiums were paid quarterly on the day named, the policy should be null and void; and during four years the party insured had paid sixteen premiums, some before and some after the days named in the policy, but none on those days ; and the insured was sick of the disease of which she died for the last twelve months preceding her death, of which sickness the company was ignorant ; and paid the last premium on the 17th of May, 1875, the same having been due by the terms of the policy on the 3rd of May, and died on the 20th of July following ; and where the last ·seven premiums had been paid subsequently to the days when due by the policy, varying from fourteen to three days subsequently thereto ; and the company, through the home agent and secretary, added to the usual words in countersigning the last receipt, the words, ·'and policy-holder in good health," said words having been inserted in no prior receipt, but the money had been received without comment theretofore, and the last premium was retained by the company until the death of the insured, and is still retained :

*Held,* that the conduct of the company in its habit of receiving premiums at other times than on the days fixed in the policy, operated as a waiver of time as of the essence of this contract with the insured ; and that payment of the last premium within a reasonable time, according to custom, after due by the policy, was equivalent to payment on the day due by the policy, and that the policy is valid and binding, notwithstanding the sickness of the insured at the date of the last payment, and the insertion of the words in respect to her health by the home agent and secretary in the last receipt.

Insurance.  Contracts.  Waiver.  Before Judge GRICE. Bibb Superior Court.  October Adjourned Term, 1877.

Reported in the opinion.

R. F. LYON; NISBETS & PIERCE, for plaintiff in error, cited 18 Barb., 541; Bliss on L. Ins., §189; 2 Big. Rep. on Ins. Cases, 150 ; 44 *Ga.*, 122 ; 50 *Ib.*, 404; 5 Otto, 330; 2 *Ib.*, 381; 57 *Ga.*, 469.

LOFTON & BARTLETT; S. HALL, for defendant, cited Bliss on L. Ins., §§186–192; 9 *Ired,* 1; 1 Big. Ins. & Ac. Cases, 406 ; 18 Barb., 541; 61 Penn. St., 107; 1 Big., 595, 685,

51; 25 Conn., 542; 6 Ad. & El., 409; 2 Excheq., 654; 26 Barb., 556; 52 Mo., 469; 97 Mass., 144; "Reporter," vol. 5, p. 1; *Ib.*, vol. 2, No. 14; 44 Penn. St., 259; 20 Wis., 335; 27 *Ib.*, 372; 5 Hill, 17; 27 Law & Eq., 140; 5 DeG. M. & G., 265; 2 Big., 365; Parsons on Contracts, 487; 20 Grat., 614; 101 Mass., 101; 97 *Ib.*, 144; 2 Kernan, 81; 6 Wallace, 129; May on Ins., §502; Bliss on L. Ins., 308; 2 Am. Lead. Cases (5th Ed.), 906; 52 Me., 336; 26 Iowa, 1; 13 Wallace, 222; 18 N. Y., 392; 57 *Ga.*, 469; 59 *Ib.*, 812; 52 *Ib.*, 640; 59 Ill., 123; 38 Iowa, 304; 39 Wis., 111; 2 Cowper, 803; 1 Conn., 90.

JACKSON, Justice.

This suit was brought by the guardian of the children of Mrs. Elizabeth Tufts on a policy on her life for three thousand dollars taken by her for their benefit. The policy contained the stipulation that the premiums were to be paid quarterly on the 3rd of August, November, February and May of each year; and in the event of failure so to pay, then the policy to be null and void. The policy was issued in 1871, and Mrs Tufts died in 1875. Four payments were made annually—sixteen in all—not one on the day specified, to-wit : the third of the month. From August, 1871, to August, 1873, they were made before due—from twenty-four days to two days before due. Thence to the last premium they were made after due—from fourteen days after due to three days after due. The last premium was paid on the 17th of May, 1875. The insured died of malignant disease of the womb on the 20th of August, 1875, and had been sick for twelve months, and had been confined to her bed six months prior to her death. The last receipt had the words " and policy holder in good health" after the word " countersigned" in the following clause thereon : " But this certificate shall not he binding on the company until the amount of the premium (as per margin) is paid and the receipt countersigned.—G. S. Obear, secretary at home office."

The policy, their receipts, and proof of death, showing the sickness of Mrs. Tufts for some months prior to her death, were put in evidence by the plaintiff, when defendant moved for a non-suit, which was not granted.

The court charged the jury : " That the premiums were to be paid promptly when due. Both parties were bound by this agreement, and by its terms a failure to pay promptly amounted to a forfeiture ; but this stipulation about prompt payment of premiums was for the benefit of the company, and it was one which could be waived by the parties, and if the company or its officers repeatedly and for years received, without complaint, premiums after they became due, the policy-holder was authorized to consider this part of the contract as waived, and unless the last payment was delayed for an unreasonable time after it became due, and if the money was tendered to the company within the usual time after it became due, the company was bound to receive it. The health of the insured had nothing to do with the question unless there was actual fraud practiced on the company in the payment of the premium, or in the procurement of the policy, and this is not pretended by the company.

" But the defendant insists that when this last payment was made Mrs. Tufts had become dangerously ill ; that this fact was not made known to the officers of the company, and that they received it on the condition that Mrs. Tufts was still in good health.

" If the company had frequently before that time received premiums after due without inquiry as to the health of Mrs. Tufts, they had no right, when the last payment was made, to put their acceptance on any condition as to her health. The premium is admitted to have been past due at that time, and if the company had given no notice until after it was too late to comply literally, that they would change their practice as to receiving past due premiums, it would be a fraud on the policy-holder now, or at the time the money was offered, to insist on terms which the policy

holder had a right to consider as waived by the company. The law requires good faith on the part of the company as well as the assured.

"If there had been such repeated waivers of time as to authorize the insured to believe it would not be insisted on, but as waived, then, before the company can return to the original terms in this respect, it must give notice of the intended change in time to allow the insured to comply literally with the terms of the policy, and if such change has been attempted by the defendant, and such notice has not been given, then the jury should find for the plaintiff the amount of the policy with interest."

On this charge the jury found for the plaintiff, and a motion was made for a new trial on the ground that the court erred in overruling the motion for a non-suit and in the charge. This motion was overruled and the defendant alleges error thereon.

Substantially but one question is made, and that is, does the fact that the continued habit of the company in receiving the premiums on days different from those specified in the policy, amount to a waiver of punctual payment on the part of the company, and was Mrs. Tufts' payment on the 17th of May, therefore, as binding on the company as if made on the 3rd of May, the day the policy required it to be made? If it had been made on that day, of course health at that time could not vitiate it. Was she authorized by the course of dealing between the company and herself to consider that the time was not regarded by them as of the essence of the contract, and that payment on the 17th was as good as if made on the 3rd? If so, it did not matter whether she was sick or well on that day, because it would not have made any difference in her right to pay on the 3rd, whether she was sick or well

Death, and bad health which causes death, are the very things against which the company insures, and it would not do to allow them to refuse payment of the premium, or to predicate a defense on change of health.

The non-exaction of punctual payment of these premiums had become the habit of the company, so far as this woman was concerned. It is remarkable that during the whole four years in which she was insured she did not pay a single premium on the day fixed. For the first two years she paid four times a year before due. For the last two, she paid four times a year after due, and not one word escaped the company of warning to her of any sort.

It seems that she lived in the country, in Jones county, and was in, perhaps, the habit of sending her money to the company, sometimes before, at others after the day appointed for the payment, and they received it and kept it. For the last twelve months she was sick, and whilst it is not shown that the company was informed thereof, yet it made no difference in regard to her mode of payment. She did as she had done before she was sick at all, and after she was confined to her bed as before she was so confined.

Upon principle, we think that though time be of the essence of the contract of insurance, and punctual payments essential to their prosperity, yet they may by their conduct waive it, and thus produce such an impression upon those dealing with them that it would be unjust to permit them to invoke the principle to their aid; and that in such a case as this, when the day seems never to have been insisted upon, but payment in a reasonable time theretofore or thereafter had been always allowed, that the company should be held to be estopped from engrafting on this last receipt a condition never exacted before.

The principle we lay down has been substantially decided by the courts of our sister states, and hinted at strongly, if not substantially ruled, by our own court. See 1 Bigelow's Ins. & Ac. Cases, 406; 18 Barb., 541; 52 Mo., 469; 44 Pa., 259; 5 Otto, 326; 52 *Ga.*, 640; 56 *Ib.*, 339; 59 *Ib.*, 812, and many other cases cited by counsel for defendant in error.

Indeed, the courts go so far as to hold that if Mrs. Tufts had offered this premium and it had been refused, on the

17th of May, still the company would have been bound, in such a case as the facts here make, on the ground that their habit had induced her to believe they would receive it then, and that they could not put her off her guard and take advantage of negligence or slowness rather on her part, engendered by confidence they had inspired in her. Much more when the company takes and keeps the money paid, ought it to be estopped setting up delay as a good ground to void the policy.

There may be some inaccuracies in the charge, and errors of slight consequence, but, taken as a whole, the meaning is, that if Mrs. Tufts had been in the habit of paying her premiums to the company out of time, and the money had been taken by them without a word of complaint for years, then, if she paid the last premium within a reasonable time, the company could not defeat her policy by setting up her sickness when it was paid; but that when received by them then, it was as good a payment as if it had been made on the day the policy itself in terms required. Such being our view of the law, the verdict is right, and could not be altered upon the facts about which there is no dispute, if tried again; therefore, slight inaccuracies in the charge are of no consequence. See 52 *Ga.*, 640; 56 *Ib.*, 339; 59 *Ib.*, 812. And cited by defendant in error, 61 Pa., 107; 25 Conn., 542; 26 Barb., 556; 97 Mass., 144; Knickerbocker *vs.* Norton, 6 Otto, 234; 20 Wis., 335; 27 *Ib.*, 372; 5 Hill, 17; 27 Eng. Law & Eq., 140; 101 Mass., 101; 97 Ind., 144; 6 Wallace, 129; May on Ins., 502; Bliss on Ins., 308; 2 Am. Lead. Cases, 906; 52 Me., 336; 26 Iowa, 1; 2 Bigelow, 265, note; 13 Wall., 222; 18 N. Y., 392; 57 *Ga.*, 469; 52 *Ib.*, 640; 59 *Ib.*, 812; 59 Ill., 123; 38 Iowa, 304; 39 Wis., 111.

Judgment affirmed.