PETER MARTIN *vs.* MERCHANTS AND MINERS TRANS-
PORTATION COMPANY.

Suffolk.    November 11, 12, 1903. — May 17, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Negligence*, Employer's liability.

In an action against a transportation company by an employee, for injuries received
while at work in the early morning in the hold of a steamer of the defendant, as
the head of a gang of three men under one of the hatchways engaged in attaching
bales of cargo by means of a rope sling to sister hooks at the end of the fall of a
stationary crane by which they were hoisted from the hold, it appeared, that in
hoisting the bales the sling was attached by a double back hitch to one of the
sister hooks and that both hooks could not be used at once, that about two hours
before the accident one of the sister hooks caught in the coaming of the hatchway
and was somewhat straightened, and expert witnesses testified that after the hook
was straightened it was not safe to make a hitch on it, that one of the employees
called out to the defendant's superintendent in charge " Take the hook off or
some one will get hurt " and the superintendent replied " Go on with your work
and never mind ", that it was the duty of the plaintiff while a load was ascending
to pick up from under it the sling from the previous load thrown down from the
deck, that the plaintiff, as he testified, had been using the hooks continuously all
that night whichever came handiest without noticing that there was anything
wrong with them, that there was not much light in the hold of the steamer that
night, and that at about four A. M. while the plaintiff was leaning over to pick
up the sling for the next load, the hitch slipped on the hook and the ascending
load fell on the plaintiff, causing the injuries. *Held,* that there was evidence of
the plaintiff's due care and of negligence of the defendant's superintendent, and
that the risk was not an obvious one assumed by the plaintiff.

In an action for injuries caused by a bale of cargo while being hoisted from the
hold of a vessel falling on the plaintiff from the slipping of a good double back
hitch of rope on a hook shown to have been somewhat straightened, where
an expert has testified that it is not safe to make a hitch on a straightened
hook, the fact, that hitches on this hook bound and held forty or fifty times in
hoisting bales before the accident, does not preclude a finding that the straight-
ened hook was the sole cause of the injuries.

TORT, under the employers' liability act, with a count at
common law, as stated in the first paragraph of the opinion,
for injuries from a bale of rags falling on the plaintiff while he
was working in the hold of the steamer Gloucester unloading
freight at four A. M. on July 14, 1898.    Writ dated December
10, 1898.

At the trial in the Superior Court before *Sherman*, J., it appeared, that the plaintiff for two years before the accident had been employed in the hold of the Gloucester and in other steamers of the defendant, and that for one year his duty had been hooking on bales for hoisting, using the same apparatus as that used at the time of the accident with sister hooks held together by an iron ring at the top. In making a double back hitch as described in the opinion only one of the sister hooks could be used, and the man who did the hooking on could use either. The hooks, a defect in one of which was alleged to have caused the accident, were in evidence at the trial and were exhibited to the court at the argument. The evidence of the accident is described in the opinion.

At the close of the evidence the defendant requested the judge to rule that on all the evidence the plaintiff was not entitled to recover and to order a verdict for the defendant. The judge refused to rule as requested, and submitted the case to the jury, with four special questions stated in the fifth paragraph of the opinion.

The jury returned a verdict for the plaintiff in the sum of $4,000; and the defendant alleged exceptions.

The case was argued at the bar in November, 1903, before *Knowlton*, *Morton*, *Lathrop*, *Barker*, *& Braley*, JJ., and afterwards was submitted on briefs to all the justices.

*G. C. Dickson & F. Peabody, Jr.*, (*A. N. Williams* with them,) for the defendant.

*J. E. Cotter*, (*T. F. McAnarney* with him,) for the plaintiff.

LORING, J. This is an action by an employee under the employers' liability act for negligence of a person acting as superintendent for the defendant. There was a count at common law, but a verdict for the defendant was directed on that count, and the case is here on an exception to the ruling allowing the jury to find for the plaintiff on the count under the statute.

The plaintiff with other employees was engaged in unloading the defendant's steamer Gloucester. The Gloucester arrived at her wharf at twelve thirty P. M., July 13. The work of unloading began without delay, and was continued without interruption. The accident to the plaintiff happened about four A. M. The

plaintiff was at work at hatchway No. 1.   The cargo at this and the other hatchways was unloaded by means of a stationary crane and fall.   At the end of the fall were a pair of sister hooks. A load was made up in the hold of the steamer, to be hoisted out by rolling the piece or pieces of which it was to be constituted on to a rope sling about fourteen feet long, or by passing the sling around them or it.   The sling was then brought up or around the load, one end being passed through the bight at the other end of it, and, when the fall came down, was hitched on to one of the sister hooks by a double back hitch.   Word was then given to hoist, and the load went up.   As the fall came down a sling for the next load was thrown down, and while the bale was going up it was the duty of one of the gang to pick up the second sling.

About two hours before the accident to the plaintiff, one of the sister hooks in use at this hatchway caught in the coaming of the hatchway as the load went up, and was thereby somewhat straightened.   The double back hitch should be made above the shoulder made by the curved shape of the hook.   There was testimony by witnesses found to be experts that when the hook in question was straightened it was not safe to make a hitch on it.   For lack of a shoulder on the hook the hitch might slip. When the hook in question was straightened, one of the employees called out to Wilson, who it is admitted "was a superintendent within the meaning of" the employers' liability act, to "take the hook off or some one will get hurt"; but Wilson replied "Go on with your work and never mind."   This is the negligence of the superintendent relied on by the plaintiff.

Two gangs of three men each worked at each hatchway, one on the inshore and the other on the offshore side of the hold. As a load went up, it was the duty of the head of the gang who made up that load to pick up the sling for the next load.   The plaintiff was the head of the inshore gang at the hatchway in question, and it was his duty to pick up the sling.   As the preceding load made up by the plaintiff's gang was going up, the plaintiff "reached over" to pick up the sling for the next load; the sling "was on the keelson"; the hitch slipped, and the load fell on the plaintiff, causing the injuries complained of.

Four questions were submitted to the jury, all of which

were answered in the affirmative: "First. Was the plaintiff in the exercise of due care? Second. Was the fact that one of the sister hooks was partially straightened called to the attention of Wilson, the superintendent, before the accident? Third. Did Nelson and Wilson consult over the matter concerning the hook or the danger, and then did they say, 'Go on with the hooks'? Fourth. Was the use of the partially straightened hook the sole cause of the injury to the plaintiff?"

The defendant's first contention is that the jury were not warranted in finding that the plaintiff was in the exercise of due care. Its argument is that "there was no cause for hurry on Martin's part, and he could have picked up the sling when they were hooking on, on the offshore side, when the fall was coming down into the hold, when they were unhooking the bale upon the deck, or when he was getting ready to hook on to his load." But the evidence warranted the jury in looking on these suggestions as academic, and in finding that the plaintiff's duty was to hurry, that the only time he was given to pick up the sling on which the next load was to be rolled was as the previous bale was going up. If not done then, it was not done when it should have been done to insure a prompt unloading. If the ascending load swung over the place where the sling to be picked up fell when thrown down, the jury were warranted in finding that it became the plaintiff's duty to go under the ascending load and pick it up. The case comes within *Carter* v. *Boston Towboat Co., post,* 496, and not within *Kilroy* v. *Foss,* 161 Mass. 138, for the reasons stated in the opinion in the first of these two cases. In this connection see *Hackett* v. *Middlesex Manuf. Co.* 101 Mass. 101; *Spicer* v. *South Boston Iron Co.* 138 Mass. 426; *Graham* v. *Badger,* 164 Mass. 42; *Haskell* v. *Cape Ann Anchor Works,* 178 Mass. 485; *Pierce* v. *Arnold Print Works,* 182 Mass. 260.

The defendant's next contention is that the danger from the straightened hook was an obvious one. It appeared from the evidence that it was the plaintiff's duty to make the hitch for the loads of the inshore gang, and that he had made all the hitches during the night in question except the hitch of the load which fell. The defendant contends that when the plaintiff had been making hitches on this pair of sister hooks for two hours

after the one in question had been straightened, he must have become aware of its condition. It was in evidence that when the fall comes down, the head of the gang making up the load reaches out and catches hold of either hook, and makes the hitch on one of them, and that both hooks cannot be used.

But the plaintiff testified that he " had been using the hooks continuously all that night, whichever came handiest, without noticing that there was anything wrong with them." There was evidence that there was not much light in the hold of the steamer that night. The jury were warranted in believing this testimony.

Neither do we think the defendant's next exception well taken. In our opinion the finding that the straightened condition of the hook was the sole cause of the accident was not guess work, but was warranted by the evidence. The fact that many of the loads made up by the inshore gang during the two hours which elapsed after the hook was straightened must be taken to have been made on the defective hook and yet went up safely, does not show that the condition of the hook was not the cause of the accident. The evidence showed that each gang sent up forty or fifty loads an hour. If this hook was used half the time, it carried up forty or fifty loads after it was straightened. But a hitch to be safe must bind; it is not enough that it may bind. For that reason the fact that hitches on this hook did bind for some forty or fifty times does not preclude a finding that the expert who testified that it was not safe to make a hitch on a straightened hook was right, and that the straightened hook was the sole cause of this injury. Freeman testified that the hitch in question was made by him and was " a good double back hitch."

In the opinion of a majority of the court the entry must be

*Exceptions overruled.*