## Edward Williams et al. v. The Albany City Insurance Company.

*Insurance: Condition in the policy: Non-payment of premium note: Loss occurring during default.* The premium upon a policy of insurance having been paid by an endorsed note, the policy containing a clause that if the note should not be paid at maturity, the premium should be considered as earned, and the policy to become void while the note remains overdue and unpaid; and a loss occurring after the maturity of the note and before it was paid: *Held*, That the condition in the policy was valid; and that the non-performance of it did not extinguish the policy. The effect of the default was merely to defeat the right to recover for any loss occurring during its continuance;—the subsequent payment of the note would revive the policy for the remainder of the term; but, for a loss occurring during the default, notwithstanding the subsequent payment of the note, the insured could not recover.

*Heard October 22.  Decided January 5.*

Case made from Wayne Circuit.

This is an action of assumpsit upon a policy of insurance, issued by The Albany City Insurance Co. on the twenty-seventh day of April, in the year one thousand eight hundred and sixty-eight, upon the schooner Stanley L. Noble, to run from said date to the thirtieth day of November, then next, in the sum of two thousand dollars.

The plaintiffs aver a total loss within the period for which the vessel was insured.

To this were added the common counts. The defendant pleaded the general issue.

On the trial the parties by stipulation, agreed to the following statement of facts :

1. The Albany City Insurance Company is a corporation, etc.

2. Prior to the date of said policy said Henry Howard, at Port Huron, Michigan, sold and delivered the schooner Stanley L. Noble to Edward Williams and Hazard M. Wentworth, of Racine, Wisconsin, for the sum of $5,500, and on the day of purchase the buyers aforesaid made and delivered to the seller a mortgage on said vessel to secure the payment of said purchase money, which mortgage was duly recorded, and that $4,400 of said purchase money is still unpaid, and said mortgage valid, and that said buyers owned and had possession of said schooner from the day of said purchase till the day of the loss, hereinafter mentioned, subject to the said mortgage.

3. That said plaintiffs applied to I. H. White & Co., insurance brokers at Port Huron, to obtain insurance on said schooner, and said White & Co. applied to A. G. Lindsay at Detroit, who was the general agent of defendant in that city, and who sent the application to the defendant at Albany.

4. That on the 27th day of April, A. D. 1868, said defendant at Albany, New York, made and entered into a certain contract or policy of insurance with said plaintiffs, of which Exhibit A., hereto annexed, is a true copy.

5. That said defendant transmitted said policy by mail to Detroit to A. G. Lindsay, and said Lindsay transmitted it by mail to I. H. White & Co., at Port Huron, in whose possession said plaintiffs first saw said policy.

6. That upon the 27th day of April A. D. 1868, at the time the plaintiffs applied to I. H. White & Co., the

said plaintiffs, to secure the payment of the premium named in said policy, executed and delivered to the said I. H. White & Co., their promissory note, to the order of Howard & Son, of which Exhibit B., hereto annexed, is a true copy, one-half of which note was for a premium for a similar amount in the Republic Insurance Company,—the course of business having been that the plaintiff applied to White & Co., for $4,000 insurance, on the 27th April, 1868, and then executed said note for the premium on that sum which White & Co. subsequently obtained insurance for in said two companies, the application in this case passing from White & Co. through Lindsay to the company at Albany.

7. That said Howard & Son, who endorsed said note were and are pecuniarily responsible.

8. That said White & Co., after receiving said endorsed note, and upon the 12th day of May, delivered said policy to said plaintiffs, and sent said note to said Lindsay who endorsed it for collection and deposited said note in the bank at Port Huron, where it was made payable.

9. That on the 12th day of November, 1868, and while the said schooner was seaworthy and was employed on the waters of Lake Michigan, and there was no other insurance made upon said schooner, which, together with that made by said policy, exceeded four thousand dollars; and while taking on a cargo of cordwood, railroad ties and cedar posts, at Brown's Pier, being an outside pier in Lake Michigan, and while said schooner was on Lake Michigan, in said policy mentioned, the said schooner, with her body, tackle, apparel and other furniture, was totally lost, by being wrecked by a peril of the sea; and that the amount of the said loss was $5,500.

10. That on the day and at the time of said loss, the said endorsed note, which fell due prior to said loss on the 30th day of October and was payable at Port Huron, was

not paid, and was protested in due form of law, so that said endorsers were legally bound. That on the 10th of November said Lindsay addressed a note to said endorsers, of which Exhibit D. is a copy, and by due course of mail received the reply subjoined to said copy.

11. That on the 19th day of November the said endorsers paid the amount of said note with interest and expenses, to I. H. White & Co., who, as well as said endorsers had seen a notice of the loss in the newspapers, and that said White & Co, received said amount and delivered up said note to said endorsers. That said White & Co. paid the said amount to said Lindsay, who received the same, also with the same knowledge of said loss. That said Lindsay transmitted said amount of money so received to the defendant at Albany, who received and kept the same.

12. That at the time and place of said loss, the said schooner, her tackle, etc., was worth the sum of $5,500.

13. That afterwards and on the 4th day of December, 1868, and more than sixty days prior to the commencement of this suit, due and sufficient proof of the aforesaid loss and of the damage to the extent of the whole nature of the property insured and of the interest of the said plaintiffs and beneficiary owners and mortgagee, as aforesaid, was made as provided in and by said policy, and transmitted to the office of said defendant in Albany.

14. That said defendant has paid no part of the two thousand dollars insurance money named in said policy, or the interest, and hath hitherto refused to pay, and upon the 27th day of November addressed a letter to the plaintiffs' agent in reference to his demand for payment, a true copy of which is hereto attached and marked C.

The policy referred to in the statement as "exhibit A" contained the following condition:

"And in case the notes or obligations given for the premium therefor, or any part thereof, be not paid at maturity, the full amount of premium shall be considered as

earned, and this policy becomes void, while said past due notes or obligations, or any part thereof, remain overdue and unpaid."

"Exhibit B. — Six months after date we promise to pay to the order of Howard & Son three hundred and sixty dollars at Jno. Miller's Bank, city of Port Huron, Michigan, for value received; being for premium of insurance ($360.) on schooner S. L. Noble. (Signed) Edward Williams. Hazard M. Wentworth, Thos. A. Ellery. Policy No. —. And in case this note be not paid at maturity, the full amount of premium shall be considered as earned, and the said policy becomes void, while this note remains overdue and unpaid."

"Exhibit C. — Albany City Insurance Company, office cor., State and James sts., Albany, N. Y., Nov. 27, 1868. Alfred Russell, Esq., Detroit, Mich. Dear Sir — We have just received your favor of the 25th instant, and in answer beg to say that this Company is under no liability for schr. S. L. Noble, the policy being by its terms void at time of disaster, by reason of non-payment of premium note at maturity. Very respectfully yours,

(Signed)          W. A. Young, *Secretary.*"

"Exhibit D. — A. G. Lindsay's General Insurance Office, No. 77 Griswold street, Bank Building, Detroit, Nov. 10, 1868. Messrs. Howard & Son, Port Huron, Mich. Gents: The premium note, $360, for insurance on schr. S. L. Noble, loss, if any, payable to H. Howard, and endorsed by you, was protested at the banking house of John Miller & Son, at maturity, for non-payment. We now look to you for payment of this note. You are probably aware that in case of a premium note being unpaid at maturity, as in this case, the vessel remains uninsured until it is paid. I respectfully beg your immediate attention to this fact.

"Truly yours,     (Signed)          A. G. Lindsay.

" We expect the amount daily from the owner.

(Signed)          Howard & Son."

A judgment having been rendered for the defendants, a case is settled and signed under the statute and brought into this Court.

*Alfred Russell,* for plaintiffs in error.

The defense in this case arises upon two clauses inserted by the defendants in their policy.

The defendants insured plaintiffs' schooner and took a negotiable note for the premium, which was secured to be paid by a perfectly good endorser, by whom it was paid 19 days after maturity.

Defendants inserted in their policy a statement that in case the note was not paid at maturity, the policy should *become void* while the note remained unpaid, the *full amount* of premium to be considered earned nevertheless.

The insurance was for $2,000, and the premium was $180. The note fell due October 30th, 1868, and was paid by the endorser 19th of November 1868. In the interim a total loss occurred, November 12th.

I. The forfeiture. was intended merely to secure *promptitude* of payment. This is sufficiently evident from the fact that the enforcement of the forfeiture would not produce the money. The Company then take another and a perfect security for *payment itself.*

*a.* We say then that the Company will be held to have elected to rely upon the security given for payment, and not upon the penal provision directed merely towards promptitude.—*4 Kent,* 57. Taking the note of a known agent is an election not to look to the principal.—*Patapsco Ins. Co., v. Smith, 6 Har. & J., 166; Paterson v. Gandasequi, 15 East, 62.* Where a corporation may either sue for a subscription or forfeit stock without sale it must make its election.—*Small v. Man'f. Co., 2 Comst., 330; Carson v. Mining Co., 5 Mich., 288.* Taking other security will discharge

a lien, even the party's own negotiable note on time.—
*3 Pars. Cont. 5th ed., 246, cas. cit.*

The provision in question is a forfeiture of that portion
of the premium covering the interval from the maturity of
the note to the end of the period of insurance.—*Kemble v.
Farren, 6 Bing. 141.*

*b.* Again : The act of the Company in asking security
for payment is inconsistent with an intention to enforce
this forfeiture. The plaintiffs clearly would not have given
such security if they had supposed such a forfeiture recon-
cilable with the reception of such security—consequently an
*estoppel in pais* arises.

*c.* The Company rely upon *Wall v. Insurance Co., 36 N.
Y., 157.* But in that case the only questions litigated were
whether the Company's agent was authorized to waive or
modify a similar clause, and whether he had done so. The
point we make was not raised or decided. In the case at
bar that fact is expressly stipulated, and it also ap-
pears that the endorser actually paid. In that case the
Court cite—*Beadle v. Chenango Ins. Co., 3 Hill. 161;
Smith v. Saratoga Ins. Co., same vol. 507, and Neely v.
Onondaga Ins. Co., 7 Hill. 50.*

*d.* It does not appear that the defendants were clothed
by the Legislature with express power to make and enforce
such a forfeiture.—*Angell & Ames Corp. §§ 333-4, seq;
Ins. Co., v. Spore, 23 Mo. 26.*

*e.* The Court must pass upon the reasonableness of such
a provision as in case of a by-law.—*A. & A. on Corp. §§347-8.*
Here the company did not receive the interest on $180
for 19 days, $0.67, and claim that we must consequently
lose $2,000. A provision working such results is *unreason-
able.*

*f.* This was an *impossible* condition. The policy is to
become void on non-payment, and the whole premium is to
be considered earned.

19 mich.—f³.

*g.* This stipulation is inserted by the insurers in an instrument signed by them alone, and is not a contract, assent to which by the insured can be implied from their reception of the policy; because any presumption of assent from such reception is rebutted by the fact of *security* being furnished. The writing of the same upon the note by the company is no part of the note signed by plaintiffs. See *R. R. Co. v. Hale,* 6 *Mich.* 243.

II. The acceptance of the money due on the premium note, with interest and expenses, was a *waiver* of the forfeiture under consideration.

*a.* Many of the cases upon the subject of waiver, which are very numerous, are undoubtedly cases like *Tayloe v. Ins. Co.,* 9 *How.,* touching the furnishing of proof of loss, where by a failure to object, on the part of the company, the assured has lost the opportunity to get up the proofs.

Take the case of an acceptance of rent after the right of re-entry has accrued. *There* the rent is not merely *considered* as earned, but it actually *is* earned. And yet there is no doubt that acceptance of the rent in such a case is a waiver of the forfeiture.— *Viall v. Genesee Ins. Co.,* 19 *Barb.* 440 ; *Frost v. Saratoga Ins. Co.,* 5 *Denio,* 154 ; *Hale v. Ins. Co.,* 32 *N. H.* 295 ; *Chalker v. Chalker,* 1 *Conn.* 79 ; *Lycoming Ins. Co. v. Schollenberg,* 44 *Penn. State* ; *Hall v. Ins. Co.,* 6 *Gray,* 185 ; *Asso. v. Ins. Co.,* 7 *Gray,* 261.

In the case relied upon by the defendant, *Wall v. Ins. Co.,* 36 *N. Y.,* the defendants *refused to accept the premium when offered,* although they had made a stipulation precisely like that undergoing examination in this case. It is evident that the company in that case did not dare to assume the risk of the effect of the act of taking the money. See also, *Canfield v. Westcolt,* 5 *Cowen,* 270.

The principle is that any party may waive provisions inserted for his own benefit by any act inconsistent with

enforcement.—*Lycoming v. Ins. Co.*, *44 Pa. State, 259, 263 ;* *Peachey v. Duke of Somersett, 1 Strange, 483.*

*b.* This forfeiture is to be construed with absolute strictness against the company.

The acceptance of full legal compensation for delay in the payment, and of their expenses in realizing from the endorser, then clearly debars the company from this defense.

In *Reed v. Ins. Co., 37 N. Y.,* (not yet out), there was a precisely similar clause, with the exception that "note or obligation" stood in place of notes or obligations. Two notes were given for the premium, *one* of which was unpaid at maturity. Judgment against the company, reversing decision below. The decision below by Masten J., in the S. C. of Buffalo, was against waiver by payment on the ground that the stipulation did not work a forfeiture. Denio, C. J., in the Court of Appeals, held that it was a forfeiture ; but that payment of premium was not a waiver. But the printed case did not *show the payment of interest or expenses of protest,* nor in fact was there any *endorser.* Nor do either of the opinions make any ruling upon this point.

*Newberry, Pond & Brown,* for defendants in error.

It is a conclusive answer to plaintiffs' claim that their premium note was not paid at maturity.

The policy provides that "in case the notes and obligations given for the premium herefor, or any part thereof, be not paid at maturity, the full amount of premium shall be considered as earned, and this policy becomes void while said past-due notes or obligations, or any part thereof, remain over-due and unpaid." There is no doubt that parties may insert such stipulations in policies as they choose, and they will be held binding, if not in violation of public policy.—*Beadle v. Chenango Ins. Co., 3 Hill, 161; Smith v. Saratoga Mutual Ins. Co., do 508; McMillan v. M. S.*

*& N. I. R. R. Co., 16 Mich. 109, 114; Neely v. Onondaga Mutual Ins. Co., 7 Hill, 49.*

We deny, however, that this condition savors in the least of injustice or oppression. Insurance companies, as a general rule, require payment of the premium at the commencement of the risk, but in marine cases a custom has arisen of extending the time and giving the insured an opportunity of paying from the earnings of the vessel—a custom wholly for the accommodation of the insured. This is virtually assuming two risks instead of one, as the liability of the underwriter would undoubtedly continue notwithstanding the insolvency of the insured happening before the maturity of the note. With this concession to his convenience,—justice, as well as the condition of the policy, demands a prompt fulfillment of his obligation, and he cannot complain that the policy is suspended so long as his own contract remains unperformed. The condition being appended to the note as well as inserted in the policy, the insured cannot plead the usual defense of secrecy or want of notice.

The exact question in this case was decided in favor of the defendant in the case of *Wall v. Home Ins. Co., 36 N. Y., 157,* where this provision was upheld.

In the unreported case of *Reed v. Ætna Insurance Company,* the Superior Court of Buffalo makes use of the following language:

"The stipulation in the policy 'in case the note or obligation given for the premium herefor, be not paid at maturity, the full amount of the premium shall be considered as earned, and this policy becomes void while said note or obligation remains overdue and unpaid,'" too plainly expresses the intent and agreement of the parties to it to be misunderstood.

By the payment of the dishonored or over due note the policy, if the subject insured was in existence, would, from that time, again become operative, but it would not cover

losses which happened after default and before payment. Any other construction would defeat the object of the clause and the plain intent of the parties.

In the case before us, the loss occurred during the time the premium note was overdue and unpaid, and the loss was total. At the time of the payment of the notes there was nothing to which the policy could attach.

It is claimed that by accepting payment of the notes, the defendant "waived the forfeiture and gave the policy its original validity."

This assumes that there was in this case a forfeiture. But this is not so. It is a case of a contract suspended by force of its terms and the act or default of the assured, and which the assured could by their own act at any time make operative again. There was no absolute unrecoverable loss of a right, and consequently no forfeiture.

Nor was there any waiver. No such fact is stated in the case nor legally inferable from the facts stated. If there had been a forfeiture and the subsequent acceptance of payment of the notes had been inconsistent with the forfeiture, then we might, as matter of law, say that the forfeiture was waived.

In the *Reed* case, the policy contemplated but a single note, when, in fact, the plaintiff had given two notes, but one of which was overdue at the time of the loss. The Court held that the words "note or obligation" could not be extended to the plural number. Even if the circumstances of the case at bar had been the same the defendant would not have been liable, as the policy provides that it shall be void if the "notes and obligations, or any part thereof," be unpaid at maturity.

In the case of *Carson v. The Arctic Mining Co.*, *5 Mich.*, *288*, the right to a double remedy of forfeiture and suit upon the note is expressly recognized.—See also *Davis v. Rider, 5 Mich. 423.*

Nor is the receipt of the money a waiver of the forfeit-

ure, since by the express terms of the policy, upon the failure to pay the note at maturity the whole of the premium is to be considered as earned.

The cases where a landlord is held to waive a right of re-entry after accepting payment of rent, are applicable only so far as to show that the policy was revived after payment of the note.

There is a distinction too between the cases where the landlord may put an end to the lease by an entry for the wrong done, and those where the wrong terminates the lease and renders it absolutely void without any act on the part of the landlord.—*Smith v. Saratoga Mutual Ins. Co.,* 3 *Hill,* 508.

We insist, in this case, not ˏthat the failure to pay avoided the policy in toto, but that it suspended the liability of the defendant so long as it remained unpaid. The loss having occurred in this interval the defendant cannot be held.

CHRISTIANCY J.

This is a case made after judgment in favor of the defendant, in the Circuit Court for the County of Wayne.

The action was assumpsit upon a policy of insurance upon the schooner Stanley L. Noble, dated April 27th 1868, insuring the vessel from that date until the 30th day of November in the same year; the declaration alleging a total loss within that period.

The premium was not paid in cash, but an endorsed note was given for it at six months.

The policy contained an express stipulation that "in case the notes or obligations given for the premium or any part thereof, be not paid at maturity, the full amount of premium shall be considered as earned, and this policy becomes void, while said past due notes or obligations or any part thereof, remain overdue and unpaid," and a mem-

orandum to the same effect was contained on the face, but at the foot of the note.

The note given was not paid at maturity and was duly protested for non-payment, so that the endorsers, who are shown to have been good, were legally bound to pay the note.

On the 12th day of November, after the note had become due and while it remained over due and unpaid, the vessel was totally lost, the loss exceeding the amount insured, and the plaintiffs' interest being undisputed.

On the 19th day of November—after the loss and after the defendants' agent had notice of it through the newspapers, the endorsers paid the note with interest and expenses to said agent who received it and delivered up the note to the endorsers. The agent transmitted the money to the defendants who received and kept it.

The defendants refused to pay the loss, and in this suit defend on the ground that, by the express provision of the policy, they were exempt from liability for any loss occurring while said note was overdue and unpaid.

Upon this statement of facts, three questions arise : 1st. What is the true interpretation of this provision of the policy ? 2nd. When properly interpreted, is it valid in law ; and, if so ? 3d. What was the effect of the defendants' receiving payment of the note, after default and after the loss ?

*First*, As to the interpretation—Was it the intention that the policy should become utterly and finally extinguished on failure to pay the note at maturity ? If the provision had stopped with the clause " and this policy becomes void," such would have been the true interpretation. But the whole instrument, and especially the whole provision upon the same identical subject must be construed together to ascertain the intent ; and the clause last cited is but a part of one entire provision, but one branch or member of the same compound sentence, and

is immediately followed by the qualifying clause, show-
ing just how long the policy is to be void by reason of
the default; "*while* said past due *notes* or *obligations* or
any part thereof *shall remain overdue and unpaid.*" This
shows just as clearly the intent to limit the period during
which the policy shall be void, as the previous words do to
make it void at all or for any period or purpose. In other
words, it shows that, notwithstanding the use of the term,
"void," the intention clearly was only to suspend its
operation as a policy, while the note or obligation should
remain overdue and unpaid, and that upon payment, after
default, the policy should again take effect from the time
of the payment and continue for the remainder of the
period originally fixed; and that, by reason of such default
it should only become wholly void, or cease to be capable
of revival as a policy, in case that default should continue
to the end of the period first fixed for the insurance. The
provision, therefore, is but a stipulation in another form of
words, that the company shall not be liable for any loss
which may occur during the continuance of the default.

In connection with this and as a necessary part of the
provision, without which it could not have full effect, it
was also stipulated that, in case of such default, the full
amount of premium should be considered as earned. But
this, it is quite evident, does not mean that the premium
should in all cases be considered as fully earned at the
date of the default, but was intended to have this full effect,
only in case the policy should not be restored, and the
risk revived for the future by payment after default, and
within the period originally fixed.

And when the policy should be thus restored and the
risk revived, the premium would cover this latter period of
risk also; and this period would constitute a part of the
time during which the premium was being earned. The
premium was, I think, evidently intended to be earned by

the risk, and the period within which it should be earned was intended to be exactly commensurate with the period or periods during which the risk should be covered by the policy. This renders the whole provision on the subject of default and its consequences, sensible and harmonious. Any other construction would be repugnant to that portion of the provision limiting the time within which the policy should be void, of which it forms an essential part.

Such being the true interpretation of this provision of the contract, the next question is upon its validity. And I confess my entire inability to discover any ground upon which its validity can be questioned. It was certainly competent for the parties to make their own contract and to fix for themselves all its terms and conditions, unless there was something illegal or opposed to public policy either in the consideration or in what was agreed to be done. Where is the law and what is the principle of public policy which this provision tends in any way to violate or impair? I am aware of none.

The competency of the parties to have agreed upon a higher rate of premium, or for the same amount of premium for a shorter period of time, cannot be doubted. And upon the same principle, it must have been equally competent to agree that the period of time to be covered by the insurance, and for which the stipulated amount of premium should be paid, might be made shorter upon any contingency the parties saw fit to agree upon, without altering the amount of the premium—especially upon any contingency, which the insured had it in their own power to prevent, and which it was their moral and legal duty to prevent. If, therefore, the provision had been that in case of default in payment of the premium at the end of the six months, the policy should from that moment become utterly extinguished, or, what is the same thing, that the period of the risk should absolutely end then, and yet the whole amount of premium should be paid, I am inclined to think

19 MICH—G.[3]

the provision would have been entirely valid. But here the provision is not that the period of insurance shall finally terminate on the default; but that the default shall only suspend the policy and the risk, during the continuance of the default, and that upon payment after default and within the period for insurance originally contemplated, the policy and the risk should revive and the period of the insurance again proceed for the balance of the time remaining after such payment. And, so far from seeing any reason to doubt the validity of the provision, I am unable to see anything unfair or unreasonable in it. It seems to me no more than fair and reciprocal that while the insured continues in his violation of the contract to pay, the insurer should not be bound by his, to sustain the risk, when the parties have so deliberately agreed, and when the insured has it in his power at any moment, by simply performing his own duty, to make the insurer resume the risk for the future; and when it must be presumed that the amount of premium was fixed with reference to these provisions. If the contingency provided for, which should operate as a suspension of the risk, was one over which the insured had no control, there might be more reason to say the insurer should return the amount of the premium applicable to the period of suspension. But any claim for the return of this portion of the premium, applicable to the period of suspension, must rest upon the default of the insured,—their violation of their clear legal duty. Could they sustain such a claim upon such a ground?

Perhaps the nature of the provision and of the principle involved may be more easily understood by illustration. A, the owner of a vessel, applies to B, an insurer, for insurance upon his vessel for seven months. He is not prepared to pay the premium in cash, but offers to give his note with an endorser at six months. B replies, "I would be willing to insure your vessel for the seven months, at nine per cent, and give six months credit for the premium, if I

could rely with entire certainty upon the payment of the proposed note at maturity. But experience has shown that notes, even of responsible parties, are not always paid at maturity and much embarrassment often arises from the delay. I must rely upon my premiums to pay my losses ; and it is very essential that I should be able to calculate with some certainty, the amount I can rely upon at any particular time. The contract of insurance is one which relates to, and is based upon, a calculation of risks; and when I give credit for the premium, I must not only calculate the hazards of the property insured, but the risk of the non-payment of the premium, not only of its final payment, but of its prompt payment at the time agreed upon, and of the embarrassment which may arise from delay. I would not take the note you propose at all, if I did not believe it would be promptly paid. But it may not be. I will take your endorsed note for the nine per cent. premium and insure your vessel for six months; that is till the maturity of the note; and, if promptly paid, the period of insurance shall be seven months, in other words I will insure the vessel for six months at my own risk of being able to obtain payment upon the note, with the option on your part of having the period of insurance extended for another month, that option to be manifested by prompt payment of the note at maturity." To this A replies : "I intend to pay my note when due. It is possible I may fail to meet it exactly at the day, but if you will allow me, in case I should fail at the day, to pay as soon as I may choose, and thereby to restore the insurance after such payment, for the balance of the period then remaining— thus only suspending the policy and throwing on me the risk only of such losses as may occur during my default; this will be more reasonable, and will leave it in my own power and make it my interest to increase the period of insurance, and thus, in effect, make the rate less. I will, therefore, consent to your proposition thus modified. B thereupon

accepts the modification, and the policy is drawn and issued with the proposition thus modified inserted as a part of its terms, and the note given and received accordingly.

This supposed contract is identical in principle with that before us. And unless insurers, because they are in that business, are under some legal obligation to insure upon terms which may be desired by others, though not satisfactory to themselves, I can see nothing unfair or unreasonable in such a contract, nor any reason why it should be forbidden by the law. And I am aware of no law or any principle of public policy, which it tends to violate. Contracts identical in principle with that before us have been treated as valid by the highest Court in the State of New York and I think them unobjectionable.—See *Wall v. Ins. Co., 36 N. Y., 157;* and *Reed v. Ins. Co.,*—not yet reported, but a copy of which was read upon the argument.

If I am right in the views I have already taken of the nature and validity of the contract, the acceptance of payment of the note in no way affects the right of the parties in this suit. It was no waiver of any of the rights of the defendants, as they were entitled to its full payment in any event and in any aspect of the case.

As this disposes of the case and shows that the plaintiffs were not entitled to recover, upon the facts stated, it becomes unnecessary to consider the other points discussed upon the argument.

The judgment of the Circuit Court in favor of the defendant must be affirmed with costs.

The other Justices concurred.