Joliffe vs. The Madison Mutual Insurance Company.

JOLIFFE vs. THE MADISON MUTUAL INSURANCE COMPANY.

| 39 | 111 |
| 112 | ²671 |
| 56 LRA | 237 |

FIRE INSURANCE.   *(1–3) Conditions in policy; validity; waiver.   (4–7)*
   *Forfeiture of policy.   (4) Waiver of forfeiture.   (5, 6) Declaration of*
   *option must be unconditional.   (7) Who may declare forfeiture.*

| 39 | 111 |
| 187 US | 350 |

| 39 | 111 |
| 117 | ⁴ 32 |

1. A condition in a policy of a mutual insurance company, that "when a note is taken for the cash premium, if it is not paid within sixty days after due, all obligations of the company to the insured, until such note is paid, are suspended," *held* valid.

2. If such condition had further provided that in case of default the whole cash premium *should be considered earned*, acceptance of the whole amount by the insurer after a loss *would not be a waiver* of the condition, or make the insurer liable for such loss; although such payment during the life of the policy would revive the risk from the date of the payment as to all of the insured property then remaining.

3. During the suspension of a policy, no premium is earned; and in the absence of a stipulation making the whole premium due on default as above described, acceptance of the whole after default, with notice of a loss which occurred during the default, *is a waiver* of the condition, and makes the insurer liable; such acceptance being inconsistent with any claim that the risk was suspended when the loss occurred.

4. An assessment by defendant on the premium notes of persons to whom it has issued policies, being payable absolutely, whether such policies have been forfeited or not, an acceptance of such a payment after a loss of which the company has notice, is not a waiver of any forfeiture.

5. Forfeitures are not favored in the law; and where one party to a contract has the option to declare it forfeited on breach of its conditions by the other, his declaration of a forfeiture must be made *unconditionally*, and in plain and positive terms.

6. By defendant's by-laws, its *directors* may at their option annul a policy of insurance, upon failure of the insured to pay an assessment upon his premium note within thirty days after demand.   On December 11, 1871, the *executive committee* of the directors adopted a resolution, "that all policies upon which the assessment levied on the 19th of January, 1871, are not paid before the 31st of December, 1871, be annulled on that day."   An assessment had been levied on the policy in suit on said 19th of January, 1871; and due notice of the resolution was given the insured.   *Held*, that even if the executive committee had power to annul policies in such cases, the resolution and notice were a mere threat as to their future action, and not a valid exercise of their option.

7. Defendant's charter provides that policies and contracts may be signed and attested, "and all other business of said corporation may be conducted, by committees or otherwise, without the presence of the board of directors, and shall be binding on the said corporation if the same be done under or in conformity to" its by-laws and ordinances. The by-laws make it the duty of the executive committee "to determine upon and audit all accounts presented against the company for payment, and generally transact all business of the company, in the absence of the board of directors, not inconsistent with the by-laws." LYON, J., is of opinion that the committee had no power to declare policies forfeited for nonpayment of assessments; but the question is not here decided.

APPEAL from the Circuit Court for *Jefferson* County.

Action upon a policy of insurance dated May 12, 1870, by which the defendant company insured the plaintiff's testator against loss by fire on certain personal property therein described, for the term of five years. The insured property was destroyed by fire February 1, 1872.

The cash premium of $16.50 payable when the policy was issued was not paid at that time, but the plaintiff's testator gave his note therefor due January 1, 1871. He also gave the usual premium note for $33, payable on call of the directors of the company. The note for the cash premium, not being paid at maturity, was sued, and judgment obtained thereon, a portion of which was paid before the loss. After the loss, and after the defendant had notice thereof, the balance of the judgment was paid to and accepted by the defendant without objection or reservation.

On the 19th of January, 1871, the defendant's board of directors made an assessment of twenty-five per cent. on all the premium notes of the company then in force, which included the premium note given by the plaintiff's testator; and payment of such assessment on the note last mentioned was duly demanded of the maker in April, and again in October of the same year; but the same remained unpaid until after the loss. After that time (but whether before or after the officers and agents of the defendant knew of the loss, does not clearly

appear), the assessment was paid to and accepted by the defendant company.

On the 11th of December, 1871, the executive committee of the board of directors adopted the following resolution: "*Resolved*, That all policies upon which the assessment levied on the 19th day of January, 1871, are not paid before the 31st day of December, 1871, be annulled on that day; and that such unpaid assessments be collected by law at once." Due notice of this resolution was immediately given to the plaintiff's testator. At a meeting of the board of directors held January 16, 1872, "the minutes of the July meeting, and of the several subsequent meetings of the executive committee, were read and approved."

There was no controversy in respect to the loss, or the amount and proofs thereof. The circuit judge held, 1. That receiving the unpaid balance of the cash premium after notice of the loss, was a waiver of the default in paying the same, estopping the defendant from asserting that its liability on the policy was suspended when the loss occurred; and 2. That the executive committee had no power to annul the policy, and the approval by the board of the minutes of the proceedings of that committee did not annul it. The judge assumed it to have been proved that when the assessment was paid, the company had notice of the loss; and he directed the jury to return a verdict for the plaintiff.

The defendant appealed from the judgment entered pursuant to such verdict.

*B. E. Hutchinson*, for appellant, argued, 1. That if any liability attached under the policy, it was at the moment of loss, and that by the express terms of the contract the liability of the company was suspended at that time, and the effect of the receipt of the balance of the cash premium was simply to cause the policy to reättach from the date of the receipt, and not to waive the condition. *Cardwell v. Republic Ins. Co.*, Ch. Leg. News, May 22, 1875; *Williams v. Ins. Co.*, 19 Mich.,

Joliffe vs. The Madison Mutual Insurance Company.

451; *Wall v. Ins. Co.*, 36 N. Y., 157; *Reed v. Ætna Ins. Co.*, Court of Appeals of N. Y., cited in 19 Mich., 451. 2. The assured, as a member of a mutual company, was chargeable with notice of its by-laws; and besides he had actual notice of the penalty for nonpayment of the assessment. Upon the question of assessments, see 51 Pa. St., 402; *Kelly v. Troy Ins. Co.*, 3 Wis., 254; *Atlantic F. Ins. Co. v. Saunders*, 36 N. H., 252; *Ins. Co. v. Paige*, 1 Hilt., 430; *Coles v. Ins. Co.*, 18 Iowa, 425. 3. The forfeiture of his policy for non-payment of an assessment does not relieve the assured from his liability to pay the assessment. *Iowa St. Ins. Co. v. Prossee*, 11 Iowa, 115; *Beadle v. Ins. Co.*, 3 Hill, 161; 6 Cranch, 192. How then can its receipt after forfeiture be a waiver ? 4. The charter expressly authorizes the executive committee to act "without the presence of the board." And its act in this case became that of the board by *ratification. Howard Ins. Co. v. Ins. Co.*, 22 Conn., 394; *Atlantic F. Ins. Co. v. Saunders, supra;* 25 Barb., 146.

*Wm. F. Vilas,* for respondent, to the point that the defendant, by receiving the balance of the cash premium with full knowledge of the loss, had waived any forfeiture which might have been incurred by nonpayment, cited *Wing v. Harvey*, 27 Eng. L. & Eq., 140; *N. Berwick Co. v. Ins. Co.*, 52 Me., 336; *Miner v. Phœnix Ins. Co.*, 27 Wis., 693; May on Ins., §§ 361-3. He further argued that the executive committee had no power to annul the policy; and that even if it had been properly annulled, the company had waived all by its subsequent acts in receiving the cash premium, and assessment, sending out to the insured blanks to prove the loss, and placing its refusal to pay solely on the ground that the cash premium note had not been paid.

LYON, J. The application for the insurance upon the property covered by the policy in suit, signed by the plaintiff's testator, contains the following condition, which is part of the

contract of insurance, viz: "Whenever a promissory note shall be taken for the cash premium, the policy in all such cases shall be issued upon the express condition that if said note is not paid within sixty days after the same shall become due, thereafter all obligations of the company to the insured shall be suspended until such time as the said note shall be fully paid." The loss occurred while a portion of the cash premium, for which a note had been given, remained unpaid, and more than sixty days after such note became due. It occurred, therefore, at a time when, by the terms of the contract of insurance, the liability of the defendant company on the policy was suspended. This stipulation in the contract is not prohibited by statute, and is not against public policy. On the contrary, it is fair and reasonable that the insurer should be relieved from liability while the insured is in default in respect to payments of premiums, and like stipulations in insurance contracts have been enforced in numerous cases, among which are the following: *Baker v. Union Mutual Life Ins. Co.*, 43 N. Y., 283; *Pitt v. Berkshire Life Ins. Co.*, 100 Mass., 500; *Wall v. Home Ins. Co.*, 36 N. Y., 167; *Williams. v. Albany City Ins. Co.*, 19 Mich., 451; *Beadle v. Chenango Co. Mut. Ins. Co.*, 3 Hill, 161. Other cases to the same effect will be found cited in *Gorton v. Dodge Co. Mut. Ins. Co.*, decided herewith. Hence, there can be no recovery unless the defendant has waived the above condition. The condition was inserted in the contract for the benefit of the defendant, and manifestly it was competent for the defendant to waive it. Has it done so? The only act of the defendant which is relied upon as such waiver, is the receipt by it of the unpaid balance of the cash premium, after the loss. The precise question is, therefore, Was the receipt of such balance by the defendant, after notice of the loss, a waiver of the condition of the contract by which the liability of the defendant on the policy was suspended when the loss occurred?

Had the agreement been that in case of default the whole

cash premium should be considered earned, and that the liability of the insurer should be suspended, or the policy be void, until such premium, or the note given therefor, should be fully paid, we should have but little difficulty with the question. In such case, the insurer, having earned the premium, would be entitled to receive it in any event. If paid during the life of the policy, it would revive the risk from the date of payment, as to all of the insured property remaining at that date; if not paid during the life of the policy, the insurer would be entitled to it, and might recover it by action. The premium would not, under such an agreement, cover any portion of the time during which the liability of the insurer was suspended. If the insurer accept the premium after default, such acceptance is not inconsistent with the claim that liabilty on the policy was suspended during default, and could not possibly mislead the insured to his prejudice. The insured pays and the insurer accepts just what the former is liable to pay and the latter is entitled to receive in any event, and the transaction lacks every essential element of a waiver or of an estoppel *in pais*. See cases above cited, particularly *Williams v. Ins. Co.*, 19 Mich., 451.

But this is not such a case. The stipulation in the contract before us is not that upon default for sixty days in the payment of the note given for the cash premium, such premium shall be considered earned, and therefore payable absolutely; but it is merely that the liability of the defendant shall be suspended from sixty days after the note became due until the same should be fully paid. The whole cash premium had not been earned when the defendant's liability on the policy was suspended, but only a *pro rata* portion of it. Neither did the premium run during the suspension; for risk and premium go hand in hand, and one ceasing, the other also ceases. A writer on this subject, speaking of the contract of insurance, says: " It is, moreover, a conditional contract; for when no risk attaches no premium is to be paid, or, if paid,

must, in the absence of fraud, be returned to the assured. In point of fact, the contract is to pay the premium on condition that the risk is run, and the refunding a premium is of frequent occurrence in maritime insurance; and that, too, in cases where it is entirely optional with the assured whether the property insured shall be put at hazard or not, as when the ship is never despatched by the owner on the projected voyage. The language of Lord MANSFIELD in *Tyrie v. Fletcher*, Cowp., 668, is explicit: 'When the risk has not been run, whether its not having been run was owing to the fault, pleasure or will of the insured, or to any other cause, the premium shall be returned.' And this principle is alike applicable to all policies of insurance." May on Insurance, § 4.

Applying these principles to the present case, it necessarily results, that at the expiration of sixty days from the time the note given for cash premium became due, the liability of defendant on the policy ceased, and, without restoring such liability, the latter was entitled to receive on such note what the policy had earned while in force, and it could have refused to receive any sum in excess of what the policy had so earned. But the defendant received the whole cash premium for which the note was given. By so doing, it received compensation for the risk covering the time when the loss occurred, and we think that it cannot now be heard to allege that at the time of the loss it had no risk on the property insured. The acceptance of the full premium after notice of the loss is entirely inconsistent with the claim that the risk was suspended when the loss occurred.

We conclude, therefore, in view of the peculiar terms of the contract, that the acceptance of the cash premium after default and notice of the loss, operated as a waiver of the suspension clause therein, and renders the defendant continuously liable on the policy the same as though the note for cash premium had been paid when due.

II. It remains to determine whether the policy was for-

féited, and the liability of the defendant thereon terminated, by the steps taken to that end because of the nonpayment of the assessment on the premium note.

It may be here observed, that the acceptance by the defendant of such premium after the loss, and even after the defendant had notice of the loss, is of no importance. Such assessment was due and payable absolutely, whether the policy was forfeited or not. *Iowa State Ins. Co. v. Prossee*, 11 Iowa, 115; *Smith v. The Saratoga County Mut. F. Ins. Co.*, 3 Hill, 508. It is apparent, from what was said on the other branch of the case, that the defendant waived nothing by accepting that which, in any event, was its due.

A by-law of the defendant provides that, " Whenever any assessments shall have been made upon the premium notes, and the sum determined which each person shall pay upon his note, if such sum shall not be paid within thirty days after the same shall have been demanded by the company or their agent, the directors may, at their option, annul the policy of insurance given upon such note, and may retain such note and collect such sum so assessed."

The charter of the defendant (Laws of 1851, ch. 394, sec. 6) provides that policies and contracts may be signed and attested, " and all other business of said corporation may be conducted and carried on, by committees or otherwise, without the presence of the board of directors, and shall be binding and obligatory on the said corporation, if the same be done under or in conformity to the by-laws and ordinances of said corporation." The by-laws provide for the appointment of an executive committee, and prescribe the functions of that committee as follows: " It shall be the duty of the executive committee to determine upon and audit all accounts presented against the company for payment, and generally to transact all business of the company, in the absence of the board of directors, not inconsistent with the by-laws."

The circuit judge denied the power of the executive com-

mittee to declare a forfeiture of the policy, and held that the action of the board of directors of January 16, 1872, failed to work such forfeiture. Speaking for myself alone, I may be permitted to say, that I fully concur with the learned judge of the court below. I think the by-law last quoted fails entirely to confer upon the executive committee the power to annul policies for nonpayment of assessments. The power given is to audit accounts and generally to transact all business of the company, in the absence of the board of directors. The meaning of the general words in the by-law should be ascertained by reference to the preceding special words therein, on the principle of *noscitur a sociis*, which is clearly applicable. Hence, the words " all business," as used in the by-law, mean all business pertaining to accounts and demands against the company. *Morse v. The Buffalo F. & M. Ins. Co.*, 30 Wis., 534. Moreover, the law does not favor forfeitures, and I think it safe to assume that the power to declare them cannot be taken by implication or inference, and that, unless expressly given, the power does not exist. As regards the resolution of the board of directors of January 16, 1872, approving certain minutes of the meetings of the executive committee, I fail to find in the record any satisfactory evidence that the board had before it the minutes of the committee meeting of December 11, 1871, at which the resolution of conditional forfeiture was adopted. But upon these points my learned associates express no opinion, and the decision of the case will be placed upon other grounds to which we all assent.

As before observed, forfeitures are not favored in the law, and will not be sustained upon mere inferences. Where, upon breach by one party of a condition or stipulation in a contract, the other party thereto has the option to declare the contract forfeited and thus relieve himself from liability upon it, and seeks to exercise such option, he must do so unconditionally, and in plain, positive and unmistakable terms. He

cannot put an end to his liability by saying to the other party, either before or after default, " Unless you perform your part of the contract by a certain future day (naming it), I shall elect to consider myself relieved of its obligations." This would be a mere notice or threat; not an effectual exercise of the option. The executive committee did nothing more than this in the present case; scarcely so much. They informed plaintiff's testator that unless the class of policy holders to which he belonged paid their assessments by a specified future day, their policies would be annulled on that day. This was a mere threat, and the most that the board of directors did was to approve the threat. Such action of the committee and of the board might as well have been taken on the day the assessment was made, and before the insured was in default in respect thereto; and manifestly it comes far short of being a declaration that policy No. 18,113, issued to John Uglow, was forfeited and annulled for nonpayment of the assessment of January 19, 1871. We find nothing in the case which will prevent the defendant company from making further assessments on the premium note given by Uglow, for losses accruing after the attempted forfeiture of the policy.

We conclude, therefore, that had the resolution of December 11, 1871, been passed by the board of directors at that time, instead of the executive committee, it would still fail to work a forfeiture of the policy in suit, because the forfeiture is declared conditionally, and because the resolution does not sufficiently specify the policies to be forfeited. There should be sufficient in the declaration of forfeiture to show that the board or committee acted specifically upon each policy sought to be annulled.

The foregoing views dispose of the case. The defendant having waived the stipulation that the risk should be suspended on default being made for more than sixty days in payment of the note given for the cash premium, and the policy not having been declared void or annulled for nonpay-

ment of the assessment on the premium note, the circuit judge properly directed the jury to find for the plaintiff; and the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.