"Wright, J.
The petition is upon a policy of insurance upon the life of Maynard French, for $10,000. The policy was executed July 6,1864. It is alleged that the annual premiums for 1865, 1866, and 1867 were duly paid, and receipts taken. That upon July 6,1868, and before noon of the proper day, the premium was duly tendered for the ensuing year, and refused. In April, 1869, Maynard French died. The policy was for the benefit of Julia A., wife of-Maynard French. She, however, died before her husband, and this suit is by her children and heirs.
The second and third paragraphs of the answer are as follows:
“ Second. Defendants deny that the annual premium upon the policy referred to in the petition, for the year 1867, was duly paid. They admit that on the sixth day of July, a. d. 1867, a receipt for said premium was given by the agent of the defendants at Cincinnati, to the said Maynard French, but no payment was made. Said French gave to said agent, for said receipt, his check upon the Fourth National Bank of Cincinnati, dated July 25,1867, for two. hundred and thirteen and 88-100 dollars, and his note for two hundred and thirteen and 87-100 dollars, payable six months after date, to the order of the defendants, with interest, and with the stipulation expressed in said note, that it was given for said premium, and that [if not paid at maturity, said policy should be null and voicQand he also gave his due bill for $1,450, unpaid part of premium on said policy, with interest at six per cent., payable annually, and with the stipulation that the same should be a lien on said policy till paid; and said receipt was given to said Maynard French upon the understanding and agreement that the same was not to be operative unless said check and said note for $213 87-100 were paid at maturity, and no part of either has ever been paid. Defendants further say that the- taking said check and note, and giving said receipt therefor, by said agent, was without the knowledge, authority, or consent of the defendants; that by the *244 terms of said policy, the annual premium thereupon was to be paid on or before twelve o’clock,m., on the sixth day of July, during its continuance, and that-said agent was authorized to receive said premiums, when due, but was expressly prohibited from altering or discharging any of the stipulations of said policy, and that said prohibition was noted on the face of said policy. Defendants further say that as soon as they were advised of said acts and doings by their said agent, they disavowed the same, and refused to recognize, and have ever since refused to recognize said policy as in force, of all which said Maynard Drench was, without delay, notified.
“ Third. Defendants deny that payment of the annual premium on said policy accruing on 'the 6th day of July, 1868, was tendered in manner and form as set forth in the petition or otherwise, and allege that no part of the same has ever been paid. And defendants further say that it is expressly stipulated in said policy that if the assured should not pay the annual premiums thereupon on or before the several days therein mentioned for the payment thereof, then, and in every such case, the defendants should not be liable to. the payment of the sum insured, nor any part thereof, and said policy should cease and determine, and all previous payments made thereon, and all profits, should be forfeited to said company.”
Upon the trial below verdict and judgment was had for plaintiffs in the sum of $8,248.
The policy is numbered 25,187, bears date July 6, 1864, and recites as its consideration: “ The representations made to them in the application for this policy, and of the sum of seven hundred and twenty-five dollars to them in hand paid by Mrs. Julia A. Drench, wife of Maynard Drench, and of the annual premium of seven hundred and twenty-five dollars to be paid on or before twelve o’clock, M., on the 6th day of July, in every year during the continuance of this policy.”
It contains the agreement of the assured that “in case *245 the said assured shall not pay the said annual premiums, on or before the several days hereinbefore mentioned for the payment thereof, then and in every such case the said company shall not be liable to the payment of the sum insured, or any part thereof, and this policy shall cease and determine; and . . . that in every case where this policy shall cease, or become or be null and void, all previous payments made thereon, and all profits, shall be forfeited to the said company.”
By the rules of the company, this was a policy, on which the assured was allowed to pay one-half the premium in cash and to give a premium note for the other half. The insurance was effected at Cincinnati, with the agent of the company, Robert Simpson.
On the 6th of July, 1867, French not being able to pay the cash part of the premium, gave his check for one-half • thereof, payable July 25th, his note at six months, and the usual premium note. The following are copies of these papers:

Value received, payable at Cincinnati, with interest at 7 per cent. No.- Due-M. French.

*246

These amounts of $213.88 are more than one-half the premium and are made by adding in interest on previous premium notes. It appears that Simpson had been in the habit of extending to French similar indulgence, in previous years, as he says, “by express consent of the Company,” and upon receiving the foregoing documents, he gave to French the usual renewal receipt as follows :

Notice to Policy Holders. — Unless premiums are' paid on or before the day they become due, the policy is forfeited and void. Payments of premiums may be made to agents upon receipts issued by the Company, signed by the treasurer and countersigned by the agent, and not otherwise. Agents are not authorized to make, alter, or discharge contracts, or waive forfeitures, or grant permits. All premiums are due and payable at the Company’s office, in Newark; but, if made to an agent on production by him of a receipt as above, it will be valid.
Lewis C. Grover, President.
The check was not paid upon July 25th, and is yet unpaid. The note has not been paid, and it is hence claimed that the policy has been forfeited and no recovery can be had upon it.
*247 In most of the cases which have been cited in argument the policy contained a clause, that it should be void upon non-payment of the premium, or any note given for such premium. This policy, however, contains no clause of' avoidance for the non-payment of notes given for premium.
It is not insisted that the non-payment of the check alone forfeited the policy, but it is claimed that failure to pay the note does work out this result. It will be seen that the note stipulates in terms that, if it is “ not paid at maturity, said policy is to be null and%void.”
It can not be successfully maintained that this clause makes the policy absolutely void upon non-payment of the note. Under the authorities such a clause, being introduced for the benefit of the insurance company, means that the policy shall be void if the company insist upon it; but it is their option to say whether this result shall follow or not.
In Bouton v. Am. Mut. Life Ins. Co., 25 Conn. 542, it is said: “As the policy provides that, in case the annual premium required by it should not be paid in advance as therein mentioned, the defendant should not be liable for the sum insured or any part thereof, and the policy should cease and determine, it was optional with the defendant to consider the policy as being at an end to all intents and purposes, in which case they would be absolved from all claim or liability therein; but, as that provision was inserted for the sole benefit of the defendants, it was only voidable at their election, and that it was therefore competent for them to waive a strict compliance with it after the time stipulated for the payment of such premium.”
This language is cited with approval in Jacobs v. Mut. Life Ins. Co., 5 Big. 48, and the proposition is abundantly sustained by authority. Wing v. Hervey, 27 E. L. & Eq. 140; Buckbee v. U. S. Mu. Ins. & Trust Co., 18 Barb. 541; Sheldon v. Conn. Mut. Ins. Co., 25 Conn. 207; Goit v. Nat. Brot. Ins. Co., 25 Barb. 189.
In the case before us, a duly authorized agent had delivered a renewal receipt, acknowledging payment of the pre *248 mium for the year beginning July 6, 1867. He had taken at the time what appeared to him sufficient payment. That he had authority to do this must be inferred from the verdict of the jury. That he had such authority is shown by his own testimony, which states that he had done the same thing in previous years, “ and each time by the express consent of the company.”
In the face of such a receipt, if the company are now allowed to dispute what it says, and deny that payment of the premium was made, it at least puts upon them all the burden of overthrowing the assertion they have thus made. If they choose to assert their option of forfeiting the policy, because the note was not paid, they must exercise that option with some degree of promptness, and in some unmistakable manner.
Have they done this ?
The company knew of this transaction as early as Noyernber, 1867. They had written to their agent, Simpson, sayv ing that this premium was unreported, and the reply was, on November 14, 1867, that it “ was paid by note.” At this early date, at least two months before the note was due, they might have informed themselves of all thé particulars of the transaction, and they could have known that their agent held a note for the premium due January 6-9, 1868, which note stipulated that its non-payment was to avoid the policy. It became them, therefore, thus early, to consider whether they should exercise their option of forfeiture. Had they instructed their agent, if the note was not paid on the 9th, that on the 10th he should declare French that the forfeiture was insisted on, the policy was void, and its surrender demanded; this would have been prompt action. Hut nothing of the kind was done.
"We have said that-the company is chargeable with full knowledge of the transaction, because they might have known, and so were bound to know, just what their agent had done, and, with this knowledge, and after the note was due, February 14, 1868, they ask for a report as to the renewal, among others, of this policy. Clearly they had not *249 exercised their option of forfeiture, then. Upon June 17, 1868, they write that a number 'of cases are still unsettled, of which this is one.
We have thus far said that they are fairly chargeable with knowledge of their agent’s transactions, but it is not necessary to stand upon this alone. They had an agent at Cincinnati who was fully empowered to act in the matter. He was authorized on the part of the company to declare the policy void, upon non-payment of the note, if he saw fit to exercise that option.
This agent states that when the check was not paid he demanded back the renewal receipt; he also says that he informed French that, “ as the matter stood, the policy was void:” The statement, if true, does not seem, to have been made for the purpose of declaring a forfeiture. No offer to surrender the note and check was made; a return of the policy was not demanded, and even afterward, the agent seems to have sought payment of the check.
He states that he demanded payment of the check some twelve or twenty times, all of which demands were made within sixty days of July 25, 1867, the date of the check, after which he did nothing. That when he took the check and note to demand the return of the renewal receipt, it was then that he informed Mr. French that the policy was void. This information, therefore, upon his own statement, must have been communicated prior to sixty days from the 25th of July, or prior to the 25th of September. Yet he writes to his company, November 14, 1867, nearly two months after, that this premium had been paid by note. • It is very certain that informing Mr. French that his policy was void because the premium was not paid, and writing to the home office, at the very same time, that the premium was paid, is not such clear and definite exercise of the right to insist upon a forfeiture which tbe law demands.
Mr. Simpson seems to have labored under considerable apprehension as to being censured by bis company, and *250 ■ whether this apprehension affected his testimony we cancan not say. But, besides inconsistencies in his own letters and statements, he is contradicted by other circumstances.
Mr. Simpson endeavored to make his company believe, and would have it now believed, that he exercised this option by informing Mr. French that the policy was void in the summer of 1867. In his letter to the company, July 16, 1868, he informs them that Mr. French came in on the 7th of July to tender his premium, which was refused. “ I then repeated the notification I had nearly a year before given him, that his policy had lapsed by non-payment of premium.”
In June, 1868, when a new premium was about to become due, Mr. French'sent his son with a note to Mr. Simpson, in reference to arranging for the premium. Simpson says he told the young man, that as the premium of 1867 had not been paid the policy was void. They young man tells a different story. He says, Simpson replied that he could not carry it again as he had done the year before. He then says that when his father received the answer he went ánd raised the money. This would not have been done if that answer had been that the policy was void. It was left to the jury to say who should be believed, Simpson or young French ? It is very plain, that if the young man is to be believed no foundation is left for Mr. Simpson’s theory of forfeiture. If he had been carrying the policy the year before it was not void during that time. Again, the idea that Simpson, at any time prior to June, 1868, informed French that his policy was void, is inconsistent with other things.
It will be remenbered, that Simpson had been indulging Mr. French during the entire continuance of the-policy; allowing him to pay half of the cash premium, giving a note for the rest. Mr. French was behind for the premium of 1867, and if he had understood that his policy was void for the non-payment of that premium, he never would have written the following note:
*251 “ Cincinnati Savings Bank, 1
' “ 29 West Third Street, V “ Cincinnati, July 3d, 1868. J
“Dear Sir: I have been in daily expectation of.money, but have not yet got it; and I propose to you the note of my son and daughter, with mortgage on real estate on Mt. Auburn, worth $20,000, incumbered with mortgage for $5,000 only, payable in April, 1869; the fee of the real estate is in them, and they are free from all debts. I want this indulgence for sixty days, to pay past dues and interest, and the cash payment for the next year on my life pollicy; condition, that if not paid at maturity the renewal receipt shall be void. Please answer. M. Erench.
“ Rob’t Simpson, Esq., Mutual Benefit Life Ins. Co.”
If the insurance was void, as Simpson claims, there were no “ past dues,” for Erench owed nothing, and he would not be offering to raise money on mortgage to pay premiums on a policy which did not exist.' Other then, than by asserting to Mr. Erench that his policy was void, Mr. Simpson seems to have done nothing to signify that he exercised his option of forfeiture. "Whether or not he did make this assertion, as he claims, was a question of fact for the jury.
As far as we are able to discover, therefore, there was nothing done to inform Mr. Erench that his policy was void, up to the 6th of July, 1868, when he went to arrange for the premium of that year, unless we take into account the statements of Simpson, which were loft to the jury. We then can not consider, that the company exercised their option to forfeit, and their failure so to do was a waiver of such forfeiture. It is said that “ slight evidence of waiver, as in other cases of forfeiture, will be sufficient.” Rifley v. Ætna Ins. Co., 29 Barb. 557.
As we have before said, the mere non-payment of the note is not alone sufficient to avoid the policy. Such payment was not a condition precedent to the attaching or continuing of the risk. It was rather a note with a condition of defeasance that might be made operative if desired.
*252 The delivery of the renewal receipt shows, prima facie, that-the risk had attached. And, again, the contract of life insurance is said to be “ sai generis.” The payment of auy premium, after the 'first; is liot a condition precedent •to the vesting of all rights, though these rights are liable to forfeiture. The payment of the first premium and delivery of the policy covers the whole lifetime, and makes a complete vested right to the sum insured, if there is death before another premium payable; if not, further premiums must be paid or forfeiture may ensue. But rights arise upon the payment of the first premium; they become vested then, and so remain until forfeiture. 87 N.’ J. 469.
We, therefore, can not consider payment of this note as absolutely necessary before the renewal attached. It may not perhaps be necessary to hold, as did the court below, that demand of payment the day the note-was due was necessary to work a forfeiture, but certainly something must be done between the date the note was due and the end of the year to establish and proclaim the forfeiture, or it must be held to be waived.
' In cases of this kind, when so serious matters as forfeitures are contemplated, it becomes insurance companies and agents to act with fairness and candor, eschewing anything like double dealing. Helme v. Phil. Life Ins. Co., 61 Penn. St. 107.
It is urged by counsel that Mr. Simpson was figuring so as to ultimately secure payment of the check and note for his company, and still refuse to renew the policy in July, 1868. As that time approached, he knew that Mr. French was in failing health, and if he could hold on to these papers and escape the risk of another year by refusing the premium, it would be a desirable transaction in a pecuniary sense. We do not know that the jury were at all impressed with this view, but if they had been, we can not say that it is absolutely unsustained by the testimony.
It appears to us that the disposition to prevent and guard against forfeitures of this kind is plainly evinced by *253 the authorities. Sheldon v. Conn. Mat. Ins. Co., 25 Conn. 207.
In the Georgia Mut. Life Ins. Co. v. Gibson, 52 Ga. 640, the ease was this : Gibson had his life insured, but upon his death the company contended that he had not paid up his dues, and so the insurance had been forfeited. He died in 1870, but in the spring of that year he had sent the company $35.25 in payment of all his dues. The company retained the money till after his death, without notifying him whether it was satisfactory or not. It was held that if the company received and retained the amount, this was a waiver of default. If the • amount was not enough to pay past dues, it was the clear duty of the company to have promptly notified him. They should not have retained the money, and remained silent till after the death.
In the case at bar, the company should not have retained the check and note, and remained silent, as they did. Tet it appears that on July 6, 1868, when Simpson refused the premium for that year, French offered to give up his policy if the company would return his check and note. This was refused.
A receipt of the premium after it was due, is held to be a waiver of forfeiture. Froelich v. Atlas Life Ins. Co., 47 Mo. 406; Sims v. State Ins. Co., Ib. 54; Hodson v. Guardian Life Ins. Co., 97 Mass. 144; Thompson v. St. Louis Mutual Life Ins. Co., 52 Mo. 469.
In Teutonia Life Ins. Co. v. Anderson, 77 Ill. 384, it is held that upon a non-payment of premium at the proper time, the company have the right to declare a forfeiture; but if it failed to do so, it would be presumed that it chose to carry the risk, upon the responsibility of the party who had agreed to guarantee the payment. This case also holds that when a company has acknowledged in the policy the receipt of premiums, it will not be allowed to dispute such acknowledgment.
The same is held in other Illinois cases. Ill. Cen. Ins. Co. v. Wolf, 37 Ill. 354; Prov. Life Ins. Co. v. Fennell, 49 Ill. 180.
*254 In Jolliffe v. Mad. Ins. Co., 39 Wis. 119, which was a fire policy, it is said: “ Forfeitures are not favored in the law, and will not be sustained upon mere inferences. Where, upon breach by one party of a condition or stipulation in a contract, the other party thereto has the option to declare the contract forfeited, and thus relieve himself from liability upon it, and seeks to exercise such option, he must do so unconditionally, and in plain, positive, and unmistakable terms.”
Nor do these views conflict with Robert v. Ins. Co., 1 His. 355, a case which counsel seem to think decisive of this. In that case the court admit that subsequent acts may prevent the avoidance of a policy, quoting some of the authorities already cited (p. 365).
As the case then stands upon the evidence, it was possible for the jury to find that in prior years Mr. Simpson, who was fully authorized to act in the premises, had varied from the strict rules of the company, and allowed Mr. French to pay half the premium in cash, giving a short note for the balance. In 1867, the check is given payable ahead, and a six months’ note, containing, for the first time, this clause of forfeiture. Simpson endeavors to collect the check, but takes no steps to avoid the policy, allowing Mr. French to believe that its validity was not impaired. . At the end of the year, when the failing health of the assured impresses upon the agent the belief that further risk would'entail the loss, he, for the first time, declares the policy already forfeited as a past event.
j These facts, and the questions of forfeiture and waiver, /were fairly submitted to the jury, and we can not say that Ithey have so clearly erred as to justify us in setting aside the verdict.
They appeared to have found either that, if there was a forfeiture, it had been waived, and, consequently, that the premium of 1867 had been paid. ' This being true, French was entitled to a renewal for the year 1868, upon tendering the amount of premium due, July 6, 1868. That amount was $725, one-half of which was $362.50, the proper *255 sum to be tendered. Simpson makes it more by adding in interest on tbe premium order. But we agree with counsel, that a tender of this interest was not necessary, as there is nothing in the policy to forfeit it on account of non-payment of interest.
But Simpson swears that there was not $362.50 tendered. In this he is again contradicted by testimony tending to .show the contrary. This was fairly submitted to the jury, and we can not say that their verdict was clearly wrong.
We have not elaborated all the points raised by counsel, but upon the views stated, the judgment must be affirmed.

Judgment affirmed.

Scott, J., dissented.